**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WENDY DAVIS; SEAN MEHL; MARVA | ) | |
| SADLER; and STIGMA RELIEF FUND, | ) | |
| | ) | CIVIL ACTION |
| *Plaintiffs*, | ) | |
| | ) | CASE NO. 1:22-CV-00373-RP |
| v. | ) | |
| | ) | |
| MISTIE SHARP; SADIE WELDON; ASHLEY | ) | |
| MAXWELL; and BRISCOE ROSWELL CAIN III, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................2

I.    The Parties ................................................................................................ 2

II.    S.B. 8's Statutory Framework....................................................................... 4

      A.    S.B. 8 Bans Abortion Beginning at Approximately Six Weeks LMP, Months Before Viability is Possible ...................................................... 4

      B.    S.B. 8's Enforcement Provisions Subject Anyone Who Provides, Aids, or Abets a Prohibited Abortion to Unlimited Civil Liability Without Adequate Procedural Safeguards................................................................................. 5

      C.    S.B. 8 Makes Litigants and Attorneys Who Challenge the Validity of Abortion Restrictions Broadly Liable for Their Adversaries' Costs and Attorney's Fees......... 8

III.    The Criminal Abortion Ban ...........................................................................9

IV.    Impact of the Six-Week Ban on Texans Seeking Abortion Care .....................10

V.    Impact of Defendants' Threats of Civil and Criminal Liability .......................11

ARGUMENT ...................................................................................................12

I.    Summary Judgment and Declaratory Judgment Standards.................................. 12

II.    Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 3 of S.B. 8........................................................................................................... 14

      A.    The Six-Week Ban Violates Abortion Patients' Fundamental Right to Abortion.... 14

         1.    Plaintiffs Have Third-Party Standing to Vindicate Abortion Patients' Right to Abortion ............................................................................... 14

         2.    The Six-Week Ban is Unconstitutional Because It Prohibits Abortion at a Point in Pregnancy Before Viability is Possible. ................................ 15

      B.    The Enforcement Scheme Violates Plaintiffs' Right to Procedural Due Process..... 18

      C.    Section 3 Violates Plaintiffs' Freedom of Expressive Association ......................... 22

III.    Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 4 of S.B. 8……….. ............................................................................................. 24

A.   The Fee-Shifting Scheme Violates Plaintiffs' Freedom of Speech ......................... 24

B.   The Fee-Shifting Scheme Is Preempted by Section 1988......................................... 26

IV.  Plaintiffs Are Entitled to a Declaration That the Criminal Abortion Ban Cannot Be Enforced Against Them. .................................................................................................... 29

CONCLUSION.............................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
  300 U.S. 227 (1937) ................................................................................................. 13

*Am. Family Life Assurance Co. of Columbus v. Biles,*
  714 F.3d 887 (5th Cir. 2013) ................................................................................... 13

*Barrows v. Jackson,*
  346 U.S. 249 (1953) ................................................................................................. 15

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996) ........................................................................................... 21, 22

*Boy Scouts of Am. v. Dale,*
  530 U.S. 640 (2000) ........................................................................................... 22, 23

*Brown v. Bd. of Educ.,*
  347 U.S. 483 (1954) ................................................................................................. 29

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.,*
  *Res.*, 532 U.S. 598 (2001) ....................................................................................... 27

*California v. ARC Am. Corp.,*
  490 U.S. 93 (1989) ................................................................................................... 26

*Carey v. Pop. Servs. Int'l,*
  431 U.S. 678 (1977) ........................................................................................... 14, 15

*Christiansburg Garment Co. v. EEOC,*
  434 U.S. 412 (1978) ................................................................................................. 27

*Collective v. Kemp,*
  472 F. Supp. 3d 1297 (N.D. Ga. 2020) ................................................................... 17

*Cooper v. Aaron,*
  358 U.S. 1 (1958) ..................................................................................................... 29

*Craig v. Boren,*
  429 U.S. 190 (1976) ................................................................................................. 14

*Cuellar v. Tex. Emp. Comm'n,*
  825 F.2d 930 (5th Cir. 1987) ................................................................................... 19

*Felder v. Casey,*
    487 U.S. 131 (1988).................................................................................... 28

*Fox v. Vice,*
    563 U.S. 826 (2011).................................................................................... 27

*Grisham v. City of Fort Worth,*
    837 F.3d 564 (5th Cir. 2016) ..................................................................... 27

*Griswold v. Connecticut,*
    381 U.S. 479 (1965).................................................................................... 14

*Haywood v. Drown,*
    556 U.S. 729 (2009).................................................................................... 28

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).................................................................................... 26

*Hubbard v. SoBreck, LLC,*
    554 F.3d 742 (9th Cir. 2009) ..................................................................... 29

*Hughes v. Rowe,*
    449 U.S. 5 (1980)........................................................................................ 27

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019)................................................................................ 25

*In re Primus,*
    436 U.S. 412 (1978)............................................................................... 24, 25

*Jackson Women's Health Org. v. Dobbs,*
    951 F.3d 246 (5th Cir. 2020) ..................................................................... 16

*June Med. Servs. L.L.C. v. Russo,*
    140 S. Ct. 2103 (2020)...................................................................... 14, 15, 16

*Lawrence v. Texas,*
    539 U.S. 558 (2003).................................................................................... 16

*Leathers v. Medlock,*
    499 U.S. 439 (1991).................................................................................... 25

*Lefemine v. Wideman,*
    568 U.S. 1 (2012)........................................................................................ 26

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001)............................................................................... 24, 26

*Logan v. Zimmerman Brush Co.*,
  455 U.S. 422 (1982) ................................................................................................. 18, 19

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................................. 18, 19

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*,
  25 F.4th 360 (5th Cir. 2022) .......................................................................................... 12

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ................................................................................................. 13, 14

*Memphis Ctr. for Reprod. Health v. Slatery*,
  No. 3:20-CV-00501, 2020 WL 4274198 (M.D. Tenn. July 24, 2020) ..................................... 17

*Mendez v. Poitevent*,
  823 F.3d 326 (5th Cir. 2016) .......................................................................................... 12

*MKB Mgm't Corp. v. Stenehjem*,
  795 F.3d 768 (8th Cir. 2015) .......................................................................................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...................................................................................................... 18

*NAACP v. Button*,
  371 U.S. 415 (1963) ...................................................................................................... 24

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
  783 F.3d 527 (5th Cir. 2015) .......................................................................................... 12

*Planned Parenthood of Se. Pa. v. Casey*,
  505 U.S. 833 (1992) ................................................................................... 5, 16, 17, 18

*Planned Parenthood S. Atl. v. Wilson*,
  26 F.4th 600 (4th Cir. 2022) .......................................................................................... 16

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ...................................................................................................... 26

*Powers v. Ohio*,
  499 U.S. 400 (1991) ...................................................................................................... 14

*Preterm-Cleveland v. Yost*,
  394 F. Supp. 3d 796 (S.D. Ohio 2019) ........................................................................... 17

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ...................................................................................................... 25

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) .................................................................................................. 22, 23

*Roe v. Wade*,
    410 U.S. 113 (1973) ............................................................................................. passim

*Romaguera v. Gegenheimer*,
    162 F.3d 893 (5th Cir. 1998) ............................................................................. 28

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ............................................................................................. 25

*Royal v. CCC & R Tres Arboles, L.L.C.*,
    736 F.3d 396 (5th Cir. 2013) ............................................................................. 12

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ............................................................................................. 25

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ............................................................................................. 15

*State v. Golden's Concrete Co.*,
    962 P.2d 919 (Colo. 1998) .................................................................................. 28

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ....................................................................................... 13, 30

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................. 15

*TXO Prod. Corp. v. All. Res. Corp.*,
    509 U.S. 443 (1993) ............................................................................................. 21

*United Indus., Inc. v. Simon-Hartley, Ltd.*,
    91 F.3d 762 (5th Cir. 1996) ............................................................................... 28

*United States v. Locke*,
    529 U.S. 89 (2000) ............................................................................................... 26

*United States v. Texas*,
    No. 1:21-cv-00796-RP, 2021 WL 4593319 (W.D. Tex. Sept. 22, 2021) .................. 2, 3, 15, 17

*United States v. Zadeh*,
    820 F.3d 746 (5th Cir. 2016) ............................................................................. 26

*United Transp. Union v. State Bar of Mich.*,
    401 U.S. 576 (1971) ............................................................................................. 24

*Walsh v. Hodge*,
  975 F.3d 475 (5th Cir. 2020) ........................................................................ 18, 19

*Whole Woman's Health v. Hellerstedt*,
  136 S. Ct. 2292 (2016) ...................................................................................... 16

*Whole Woman's Health v. Jackson*,
  No. 22-0033, 2022 WL 726990 (Tex. Mar. 11, 2022) ........................................ 5, 7

*Williamson v. Mazda Motor of Am., Inc.*,
  562 U.S. 323 (2011) ............................................................................................ 26

**Statutes**

28 U.S.C. § 2201 ...................................................................................................... 13

42 U.S.C. § 1983 ...................................................................................................... 29

42 U.S.C. § 1988 ................................................................................................ passim

Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021)……................................ passim

Tex. Civ. Prac. & Rem. Code § 15.002 .................................................................... 6

Tex. Civ. Prac. & Rem. Code § 30.022 ................................................ 8, 9, 25, 27, 28

Tex. Health & Safety Code § 171.002 .................................................................... 10

Tex. Health & Safety Code § 171.201 ...................................................................... 4

Tex. Health & Safety Code § 171.203 ...................................................................... 4

Tex. Health & Safety Code § 171.204 ...................................................................... 4

Tex. Health & Safety Code § 171.205 ...................................................................... 5

Tex. Health & Safety Code § 171.207 ...................................................................... 5

Tex. Health & Safety Code § 171.208 ................................................................ passim

Tex. Health & Safety Code § 171.209 .................................................................. 7, 20

Tex. Health & Safety Code § 171.210 .................................................................... 20

Tex. Rev. Civ. Stat. arts. 4512.1-4512.4, 4512.6 (1974) ........................................ 9

**Other Authorities**

U.S. Const. art. VI.............................................................................................. 23, 29, 30

Fed. R. Civ. P. 56................................................................................................... 1, 12

## INTRODUCTION

Plaintiffs want to provide financial assistance to Texas residents seeking previability abortion care.  In response to Defendants' threats of civil lawsuits and criminal prosecution, Plaintiffs seek a declaratory judgment that they will not face liability for doing so because Texas statutes banning abortion at pre-viability stages of pregnancy are unenforceable.

Abortion funds are charitable organizations that provide financial assistance to abortion patients.  Decl. of Marva Sadler ("Sadler Decl.") ¶ 3.  Plaintiff Stigma Relief Fund is an abortion fund that serves patients seeking care in six states, including Texas.  *Id.* ¶ 7.  The other Plaintiffs support the work of abortion funds serving Texas patients ("Texas abortion funds"), including by donating money to them.  *See id.* ¶ 1; Decl. of Sean Mehl ("Mehl Decl.") ¶¶ 4, 8-9; Decl. of Wendy R. Davis ("Davis Decl.") ¶¶ 7, 9, 11.  Defendants Sharp, Weldon, and Maxwell have each made credible threats to sue Texas abortion funds and their donors, employees, and volunteers, under Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8").[1]  Defendant Cain, a Texas legislator, has sent cease-and-desist letters threatening Texas abortion funds and their donors, employees, and volunteers with criminal prosecution under the Texas statutes (collectively, the "Criminal Abortion Ban") held unconstitutional in *Roe v. Wade*, 410 U.S. 113, 117 & n.1, 166 (1973).  All Defendants have amplified their threats broadly on social media.

The facts of this case are not in dispute, and Defendants' threats against abortion funds and their associates are well documented.  Accordingly, Plaintiffs respectfully move the Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment on all of their claims.

---

[1] The full text of S.B. 8 is attached hereto as Exhibit 1.

## STATEMENT OF FACTS

### I.    The Parties

Plaintiff Stigma Relief Fund is a nonprofit corporation organized under the laws of Texas.

Sadler Decl. ¶ 1.  It seeks to ensure that everyone who needs an abortion gets the compassionate,

high-quality abortion care they deserve.  *Id.* ¶ 4.  To that end, it provides financial assistance to

patients seeking abortion care from associated providers in six states, including Texas.  *Id.* ¶¶ 4,

7.  It also works with supporters and allied organizations, including other Texas abortion funds,

to advocate for abortion rights and public policies that promote equitable access to abortion care

that is free of medically unnecessary restrictions.  *Id.* ¶ 5.

Plaintiff Marva Sadler serves as Chair of Stigma Relief Fund's Board of Directors, and

Plaintiff Sean Mehl also serves on the Board.  *Id.* ¶ 1; Mehl Decl. ¶ 4.  Both have donated money

to Stigma Relief Fund and other Texas abortion funds in the past, and both would like to continue

making such donations in the future.  Sadler Decl. ¶ 1; Mehl Decl. ¶ 8.

Plaintiff Wendy Davis is a Texas resident who strongly supports abortion rights.  Davis

Decl. ¶¶ 1-8.  She regularly donates money to the Lilith Fund for Reproductive Equity ("Lilith

Fund"), and she intends to donate money to other Texas abortion funds, including the Stigma

Relief Fund.  *Id.* ¶¶ 9, 15.

Defendant Mistie Sharp is a Texas resident.  Sharp Decl. ¶ 3, *United States v. Texas*, No.

1:21-cv-00796-RP, ECF No. 28-1.  On September 22, 2021, she moved to intervene in *United

States v. Texas*, No. 1:21-cv-796-RP, a case pending in this Court that concerns the

constitutionality of S.B. 8.  Mot. to Intervene at 3, *United States v. Texas*, No. 1:21-cv-00796-RP,

2021 WL 4593319 (W.D. Tex. Sept. 22, 2021), ECF No. 28.  In support of that motion, Ms. Sharp

declared under penalty of perjury that she "intend[s] to sue . . . abortion funds who pay for other

people's abortions in violation of Senate Bill 8."  Sharp Decl. ¶ 9, *United States v. Texas*, No. 1:21-

cv-00796-RP, ECF No. 28-1.  Her motion to intervene was granted on September 28, 2021.  Order, *United States v. Texas*, No. 1:21-cv-00796-RP, ECF No. 40.

Defendants Sadie Weldon and Ashley Maxwell are likewise Texas residents.  Mehl Decl. ¶ 11.  In February 2022, they respectively filed in state court verified petitions to take depositions and investigate a lawsuit ("Rule 202 Petitions") against two Texas abortion funds—Lilith Fund and North Texas Equal Access Fund ("TEA Fund").  *Id.* ¶ 12.  These petitions assert that Defendants' "goal is to . . . ascertain the identity of all individuals and organizations who are subject to liability under [Texas Health & Safety Code] section 171.208."  *Id.* Ex. B at ¶ 9, Ex. C at ¶ 9.  On February 14, 2022, Defendants Weldon and Maxwell, through their lawyers, issued a press release stating that they filed the Rule 202 Petitions "to determine which individuals are subject to civil liability and criminal prosecution for paying [for] illegal abortions, which will include employees, volunteers, and donors" of the respondent abortion funds.  *Id.* ¶ 13, Ex. D. Subsequently, on February 21, 2022, Defendants Weldon and Maxwell issued an additional press release through their lawyers stating that the respondent abortion funds "exposed their employees, volunteers, and donors to civil lawsuits and potential criminal prosecution."  *Id.* ¶ 14, Ex. E.  That same day, in response to a tweet by one of the abortion funds announcing its goal to "raise $20k for Texans who need abortions," Defendants' lawyers tweeted a warning to potential "donors" that they "could get sued under S.B. 8."  *Id.* ¶ 14, Ex. F.  On February 23, 2022, Defendants' lawyers tweeted that "[i]t is illegal to donate to abortion funds that pay for abortions performed in Texas. Violators are subject to civil lawsuits and criminal prosecution."  *Id.* ¶ 14, Ex. G.

Defendant Briscoe Roswell Cain III is a member of the Texas House of Representatives. *Id.* ¶ 15.  On March 18, 2022, he issued a press release on his official letterhead stating that he "sent cease-and-desist letters to every abortion fund in Texas, reminding them that Texas law

imposes felony criminal liability on any person who 'furnishes the means for procuring an abortion knowing the purpose intended.'" *Id.* ¶ 15, Ex. H.  The press release further stated that Rep. "Cain warned that the employees, volunteers, and donors of abortion funds will be criminally prosecuted if they do not immediately halt their illegal acts and stop paying for abortions performed in Texas." *Id.*  On March 29, 2022, Rep. Cain sent a letter to an attorney representing some of the Texas abortion funds.  *Id.* ¶ 16.  The letter, which appears in Rep. Cain's Twitter feed, stated that he sent the prior cease-and-desist letters in his official capacity as a Texas State Representative.  *Id.* Ex. I.  It further stated that the U.S. Supreme Court lacks the authority to invalidate Texas laws that violate the U.S. Constitution and that "article 4512.2 [of the Revised Civil Statutes] remains fully enforceable against abortion funds that pay for abortions in Texas, as well as their donors."  *Id.*

## II.     S.B. 8's Statutory Framework

As enacted, S.B. 8 has ten sections.  *See* S.B. 8.  Its operative provisions are set forth in Sections 3 and 4, which include an abortion ban, civil enforcement mechanism, and fee-shifting scheme.  *See* S.B. 8 §§ 3-4.  Each of these provisions is described in detail below.

### A.     *S.B. 8 Bans Abortion Beginning at Approximately Six Weeks LMP, Months Before Viability is Possible*

S.B. 8 requires physicians to perform an ultrasound before providing an abortion, and it prohibits the abortion if a "fetal heartbeat" is detected.  S.B. 8 § 3 (codified at Tex. Health & Safety Code §§ 171.203(b), 171.204(a)).[2]  "Fetal heartbeat" is defined as "cardiac activity . . . within the  gestational sac," Tex. Health & Safety Code § 171.201(1), including in an embryo, *id.* § 171.201(7).  Such activity is generally detectible in an embryo via ultrasound beginning at approximately six weeks of pregnancy, as measured from the first day of a patient's last menstrual

---

[2] Hereinafter, citations to codified provisions of S.B. 8 will be to the relevant code only.

period ("LMP").  Decl. of Alison A. Cowett ("Cowett Decl.") ¶ 10.

"[T]he concept of viability . . . is the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb . . . ."  *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 870 (1992).  A developing fetus typically attains viability around twenty-four weeks LMP.  Cowett Decl. ¶ 11.  S.B. 8 therefore bans abortion months before viability is possible.

S.B. 8 has no exception for pregnancies resulting from rape or incest or for fetal health conditions incompatible with sustained life after birth.  *See* S.B. 8 § 3.  There is only a narrow "medical emergency" exception, Tex. Health & Safety Code § 171.205(a), which requires "a life-threatening physical condition," *id.* § 171.002(3).

>    **B.      *S.B. 8's Enforcement Provisions Subject Anyone Who Provides, Aids, or Abets a Prohibited Abortion to Unlimited Civil Liability Without Adequate Procedural Safeguards***

S.B. 8 expressly precludes government officers from enforcing the six-week ban.  Tex. Health & Safety Code § 171.207(a); *see Whole Woman's Health v. Jackson*, No. 22-0033, 2022 WL 726990, *9 (Tex. Mar. 11, 2022).  Instead, the statute creates a private, civil enforcement mechanism.  It authorizes "[a]ny person, other than an officer or employee of a state or local governmental entity in this state" to "bring a civil action against any person" who violates S.B. 8.  Tex. Health & Safety Code § 171.208(a).  In particular, three classes may be targeted by such actions:  (1) any person who "performs or induces an abortion in violation of" the six-week ban; (2) any person who "knowingly engages in conduct that aids or abets the performance or inducement of" an abortion that violates the six-week ban; and (3) any person who "intends to" perform, induce, aid, or abet a prohibited abortion, regardless of whether they actually commit those acts.  *Id.* § 171.208(a)(1)-(3).  Although S.B. 8 does not define aiding or abetting, it states that the term includes "paying for or reimbursing the costs of an abortion."  *Id.* § 171.208(a)(2).

People who engage in conduct prohibited by S.B. 8 are subject to mandatory, draconian penalties.  Where an S.B. 8 claimant prevails, "the court shall award":  (1) "injunctive relief sufficient to prevent the defendant from violating [the six-week abortion ban] or engaging in acts that aid or abet violations of [the six-week abortion ban]"; (2) "statutory damages in an amount of not less than $10,000 for each abortion" that the defendant provided, aided, or abetted; and (3) the claimant's "costs and attorney's fees."  *Id.* § 171.208(b).  S.B. 8 does not require the claimant to allege or prove any injury to obtain an award.  *See id.* § 171.208.

The rules governing S.B. 8 enforcement proceedings sharply diverge from the rules that normally apply to Texas litigants in ways that make it impossible for those sued to fairly defend themselves.  For example, S.B. 8 authorizes statewide venue for enforcement actions.  Texas residents may file lawsuits in their home counties and then veto transfer to a more appropriate venue.  *See id.* § 171.210(a)(4) (permitting suit in the claimant's county of residence if "the claimant is a natural person residing in" Texas); *id.* § 171.210(b) (providing that an S.B. 8 "action may not be transferred to a different venue without the written consent of all parties").  As a result, those targeted by S.B. 8 lawsuits can be forced to defend themselves in multiple, simultaneous enforcement proceedings in courts across the State.  In contrast, venue in Texas is generally limited to where the events giving rise to a claim took place or where the defendant resides, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), and a Texas state court may generally transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice," *id.* § 15.002(b).

Moreover, S.B. 8 authorizes one-way fee-shifting in favor of claimants.  It provides that, in enforcement proceedings, anyone who brings an S.B. 8 claim and prevails is entitled to recover their costs and attorney's fees. Tex. Health & Safety Code § 171.208(b)(3).  There is no limitation as to reasonableness or necessity.  *Id.*  Meanwhile, those sued under S.B. 8 cannot be awarded

6

costs or attorney's fees if they prevail, regardless of how many times they are sued or in how many venues. *Id.* § 171.208(i).

Additionally, S.B. 8 eliminates or limits key defenses available to litigants in other actions that are necessary to ensure fundamental fairness. *Id.* §§ 171.208(e)-(f-1), 171.209. For instance, S.B. 8 bars litigants from defending themselves on the ground that a valid court order authorized their conduct; or that the patient consented to the abortion at issue. *Id.* § 171.208(e)(3), (6). S.B. 8 also limits the constitutional defenses that a defendant may assert. *Id.* §§ 171.208(e)(2), (7); 171.209. For example, Plaintiffs cannot assert in an S.B. 8 enforcement proceeding that S.B. 8 is unconstitutional because it contravenes nearly five decades of binding federal precedent holding that pre-viability abortion bans are per se unconstitutional, *id.* § 171.208(e)(2), (7); *see infra* at 15-17, nor that their inability to provide financial assistance to abortion patients will impose an undue burden on the patients' ability to obtain pre-viability abortion care, Tex. Health & Safety Code § 171.209(d)(1). Similarly, if the Supreme Court were to overrule *Roe* or *Casey* at any time within the four-year limitations period following the performance of a prohibited abortion, a defendant could not assert a defense based on the fact that the abortion at issue was constitutionally protected at the time it was performed, *id.* §§ 171.208(d), 171.209(e).

The clear import of these provisions is to subvert the supremacy of federal law, force those who facilitate abortion access to defend themselves over and over again for the same conduct, and undermine their ability to successfully defend themselves against liability for constitutionally protected activities.[3]

---

[3] Indeed, at oral argument before the Texas Supreme Court, Texas admitted that the goal of S.B. 8's enforcement scheme is to enable the statute to evade federal judicial review. Video of Oral Arg. at 17:48-18:07, *Whole Woman's Health v. Jackson*, 65 Tex. Sup. Ct. J. 625 (Mar. 14, 2022) (Cause No. 22-0033), https://www.texasbarcle.com/cle/SCPlayer5.asp?sCaseNo=22-0033&bLive=&k=&T=17.

**C.      *S.B. 8 Makes Litigants and Attorneys Who Challenge the Validity of Abortion Restrictions Broadly Liable for Their Adversaries' Costs and Attorney's Fees***

Section 4 of S.B. 8 creates an unprecedented one-way fee-shifting scheme designed to deter legal challenges to all Texas abortion restrictions and penalize anyone who tries to bring such a challenge.  *See* Tex. Civ. Prac. & Rem. Code § 30.022.  This scheme is distinct from the fee-shifting provision in Section 3 of the statute that applies only to S.B. 8 enforcement actions.  Tex. Health & Safey Code § 171.208(b)(3).  The Section 4 fee-shifting scheme applies to any person—*including a party's lawyer*—who seeks declaratory or injunctive relief to prevent enforcement of laws like S.B. 8 "that regulate[] or restrict[] abortion," or laws that exclude those who "perform or promote" abortion from participating in public funding programs.  Tex. Civ. Prac. & Rem. Code § 30.022(a) (providing that "any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state . . . or any person in this state from enforcing any . . . law that regulates or restricts abortion or that limits taxpayer funding for individuals or entities that perform or promote abortions, in any state or federal court, or that represents any litigant seeking such relief in any state of federal court, is jointly and severally liable to pay the costs and attorney's fees of the prevailing party").  It makes no exception for federal civil-rights claims, including Section 1983 claims, that are already subject to a comprehensive fee-shifting regime under 42 U.S.C. § 1988.  *See* Tex. Civ. Prac. & Rem. Code § 30.022.  Nor does it limit fees to those that are reasonable or necessary.  *See id.*

The fee-shifting scheme makes civil-rights plaintiffs and their attorneys liable for their adversaries' attorney's fees unless they prevail on all of their claims.  *Id.* § 30.022(b).  If a court dismisses a claim brought by a civil-rights plaintiff, regardless of the reason, or enters judgment in the other party's favor on that claim, the party defending the abortion restriction is deemed to have "prevail[ed]."  *Id.* That is true even if the court ultimately enjoins the challenged abortion

restriction in full after, for example, rejecting one claim pleaded in the alternative or dismissing another rendered moot by circumstance.  *See id.*  Further, the party seeking fees need not ask for them in the underlying litigation.  *Id.* § 30.022(c)-(d)(1).  Rather, that party can file a new lawsuit against the plaintiffs and/or their attorneys at any time within three years of the claim resolution.  *Id.* § 30.022(c).  Further, the party seeking fees can choose to litigate their application in a new venue before a judge who did not preside over the initial case.  *Id.* § 30.022(c)-(d)(2).  Courts resolving such fee applications are directed to start from scratch.  According to S.B. 8, they may not consider whether the court in the underlying case already denied fees to the party defending the abortion restriction or already considered the application of S.B. 8 Section 4 and held it "invalid, unconstitutional, or preempted by federal law."  *Id.* § 30.022(d)(2)-(3).

### III.    The Criminal Abortion Ban

In *Roe*, 410 U.S. at 116-17, the Supreme Court considered the constitutionality of the Criminal Abortion Ban, which it defined as Articles 1191-94 and 1196 of the Texas Penal Code.[4] The text of those statutes, which made it a crime to "procure an abortion" at any stage of pregnancy, is set forth in the Court's opinion.  *See id.* at 117 n.1.  Among other things, the Criminal Abortion Ban provided that "[w]hoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice."  *Id.* (quoting Tex. Penal Code art. 1192 (1972)).  The Criminal Abortion Ban's only exception was for abortions "procured or attempted by medical advice for the purpose of saving the life of the mother."  *Id.* (quoting Tex. Penal Code art. 1196 (1972)).

The Supreme Court held that the broad sweep of the Criminal Abortion Ban made it unconstitutional, and it further held that the various provisions of the ban were not severable from

---

[4] The Texas Penal Code was recodified in 1973, and the relevant statutes were transferred to the Texas Civil Code, where they were codified at Tex. Rev. Civ. Stat. arts. 4512.1-4512.4, 4512.6 (1974).

one another.  *See id.* at 166.  It therefore concluded that "the Texas abortion statutes, as a unit, must fall."  *Id.*  It affirmed the lower court's grant of a declaratory judgment that the Criminal Abortion Ban is unconstitutional, and it held that no further relief was necessary "for we assume the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional."  *Id.*

S.B. 8 includes a legislative finding that "the State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger."  S.B. 8 § 2.

### IV.   Impact of the Six-Week Ban on Texans Seeking Abortion Care

Many people do not realize that they are pregnant until they are more than six weeks along. Cowett Decl. ¶ 13.  This is especially true of people with irregular menstrual cycles, those who lack pregnancy-related symptoms, and adolescents.  *See id.*  In addition, some people seek abortions because of maternal or fetal health conditions that do not arise or are not detected until after six weeks LMP.  *Id.* ¶ 14.  Many such conditions do not satisfy the narrow definition of medical emergency applicable to the Act.  *See* Tex. Health & Safety Code § 171.002 ("'Medical emergency' means a life-threatening physical condition aggravated by, caused by, or arising from a pregnancy that, as certified by a physician, places the woman in danger of death or a serious risk of substantial impairment of a major bodily function unless an abortion is performed."); Cowett Decl. ¶ 15.

For example, previable preterm rupture of membranes ("previable PPROM") occurs when the membranes that surround the pregnancy rupture prior to fetal viability but the patient does not go into labor.  *Id.*  Previable PPROM is not always a life-threatening condition, but it creates a risk of serious infection, severe bleeding, and fetal demise.  *Id.*  Once an infection sets in or severe bleeding occurs, it may be too late to save the pregnant patient's life by performing an abortion.

*Id.* Cancer is another serious medical condition that would not satisfy the definition of medical emergency applicable to S.B. 8. *Id.* In some cases, cancer treatments cannot be administered while a patient is pregnant. *Id.*

Likewise, many abortion patients face financial and logistical barriers to obtaining an abortion before six weeks LMP. *Id.* ¶¶ 16-18; Sadler Decl. ¶¶ 12-14. Nationwide more than three-quarters of abortion patients are low-income, and nearly half live in households that are below the federal poverty level. Cowett Decl. ¶ 17. For people with little disposable income, it often takes time to save or raise enough money to pay for an abortion. *Id.*; Sadler Decl. ¶ 12. Although abortion funds provide financial assistance to abortion patients, they are generally able to cover only a fraction of the cost of abortion care. *See* Sadler Decl. ¶ 9. Their clients must still raise the balance of funds needed on their own. *See id.*

Thus, for many Texans, there is no practical difference between banning abortion at six weeks LMP and banning abortion altogether. It is therefore not surprising that, according to data published by the Texas Health & Human Services Commission, after S.B. 8 took effect, the number of patients obtaining abortions in Texas dropped by approximately sixty percent. Cowett Decl. ¶ 19.

### V.   Impact of Defendants' Threats of Civil and Criminal Liability

Defendants' threats of civil lawsuits and criminal prosecutions against abortion funds and their donors, employees, and volunteers, *see supra* at 2-4, have created uncertainty about whether donors can contribute money to Texas abortion funds without being subject to civil and criminal liability. Mehl Decl. ¶ 17; Sadler Decl. ¶ 16. Plaintiffs Sadler and Mehl intend to cease donating money to Texas abortion funds until the Court provides clarity on this issue. Mehl Decl. ¶ 17; Sadler Decl. ¶ 18. Similarly, Defendants' threats have left the Stigma Relief Fund uncertain of whether it can provide financial assistance to patients seeking abortion care in Texas after six

weeks LMP without subjecting itself and its donors, employees, and volunteers to civil and criminal liability. Sadler Decl. ¶ 16-17. It intends to forgo providing such financial assistance until the Court issues a ruling in this case. *Id.* ¶ 17. Further, all Plaintiffs reasonably fear that the aggressive, public nature of Defendants' threats will have a chilling effect on other abortion funds and abortion fund supporters, making it harder for Plaintiffs to associate with them for the purpose of achieving common goals, including communicating messages of support and affirmation to abortion patients and advocating for access to safe, legal, and affordable abortion care for all Texans. *See* Davis Decl. ¶¶ 10-11, 16; Mehl Decl. ¶¶ 6, 9, 17; Sadler Decl. ¶¶ 5-6, 18.

## ARGUMENT

### I.    Summary Judgment and Declaratory Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (additional citations omitted)). "The Federal Rules of Civil Procedure give district courts the power to grant summary judgment motions before the parties have completed discovery." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (citing Fed. R. Civ. P. 56(b)); *accord Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) ("Rule 56 does not require that *any* discovery take place before summary judgment can be granted." (citation omitted)).

Rule 56(d) authorizes the court to delay consideration of a motion for summary judgment to allow the nonmoving party "time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). "However, 'non-moving parties requesting Rule 56(d) relief may not simply

rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *MDK Sociedad*, slip op. at 6–7 (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (additional citations omitted)). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* at 7 (citations omitted).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  *Id.* "[A]llegations that irreparable injury is threatened are not required."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937).

Like all federal actions, an action brought under the Declaratory Judgment Act must satisfy Article III's case or controversy requirement.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).  "[W]here threatened action by *government* is concerned, [Article III does] not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."  *Id.* at 128–29. "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."  *Id.* at 129; *accord Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("[A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be

13

constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.").  The same is true where "the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a *private party* rather than the government."  *MedImmune, Inc.*, 549 U.S. at 130; *see id.* at 137 (holding that a plaintiff was not required to breach a patent license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid and unenforceable).

## II.   Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 3 of S.B. 8

### A.   *The Six-Week Ban Violates Abortion Patients' Fundamental Right to Abortion*

#### 1.   Plaintiffs Have Third-Party Standing to Vindicate Abortion Patients' Right to Abortion

The rule disfavoring third-party standing is a prudential doctrine, not a constitutional requirement, and it "is hardly absolute." *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2117–18 (2020) (plurality opinion); *accord id.* at 2139 n.4 (Roberts, C.J., concurring).  The Supreme Court has, for example, permitted third-party standing in cases where a litigant has Article III standing to challenge the constitutionality of a law, policy, or action, and the "rights of third parties . . . would be 'diluted or adversely affected' should [its] constitutional challenge fail." *Carey v. Pop. Servs. Int'l*, 431 U.S. 678, 684 (1977) (quoting *Craig v. Boren*, 429 U.S. 190, 195 (1976)). Such cases have entailed a variety of fact patterns.  *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 415 (1991) (holding that a criminal defendant had third-party standing to assert the rights of potential jurors excluded from jury service); *Carey*, 431 U.S. at 683 (holding that a company selling non-medical contraceptives had third-party standing to assert the rights of potential customers, including minors); *Craig*, 429 U.S. at 194 (holding that a beer vendor had third-party standing to assert the rights of potential customers); *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965)

(holding that healthcare providers had third-party standing to assert the rights of patients seeking to use contraception); *Barrows v. Jackson*, 346 U.S. 249, 258 (1953) (holding that white property owners had third-party standing to assert the rights of potential black purchasers).

Notably, the Supreme Court has long permitted abortion providers "to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." *June Med. Servs.*, 140 S. Ct. at 2118 (collecting cases).  In fact, it has recognized that third-party standing is especially warranted when "the rights involved fall within the sensitive area of personal privacy" because third parties "may be chilled from assertion [of their own rights] by a desire to protect the very privacy [they seek to vindicate] from the publicity of a court suit." *Carey*, 431 U.S. at 684 n.4 (quoting *Singleton v. Wulff*, 428 U.S. 106, 117 (1976)).

Here, Plaintiffs satisfy the requirements for third-party standing.  First, they are suffering injury-in-fact that is caused by Defendants' efforts to enforce S.B. 8 against them, and their injury would be redressed by a judgment that declares S.B. 8 unenforceable.  *See supra* at 11-12; *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–67 (2014) (explaining that, when a plaintiff seeks to engage in conduct that is proscribed by statute, a credible threat of enforcement gives rise to injury-in-fact).  Second, abortion patients possess a constitutional right to pre-viability abortion care, *infra* at 15-16, that would be diluted or adversely affected should Plaintiffs' lawsuit challenging S.B. 8 fail, *see Carey*, 431 U.S. at 684.  Accordingly, Plaintiffs may assert abortion patients' constitutional right to abortion.

### 2.   The Six-Week Ban is Unconstitutional Because It Prohibits Abortion at a Point in Pregnancy Before Viability is Possible

"Indisputable, binding precedent holds that pre-viability bans on abortion are unconstitutional." *United States v. Texas*, No. 1:21-CV-796-RP, __ F. Supp. 3d __, 2021 WL 4593319, at *35 (W.D. Tex. Oct. 6, 2021), *stay pending appeal granted by* No. 21-50949, 2021

WL 4786458 (5th Cir. Oct. 14, 2021), *cert. dismissed*, 142 S. Ct. 522 (2021).  Indeed, in an unbroken line of precedent spanning nearly five decades, the Supreme Court has consistently held that the right to end a pregnancy is a fundamental component of the liberty protected by the Due Process Clause. *See, e.g.*, *June Med. Servs., L.L.C. v. Russo*, 140 S. Ct. at 2112 (2020) (plurality); *id.* at 2134-2135 (Roberts, C.J., concurring); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309-10 (2016); *Lawrence v. Texas*, 539 U.S. 558, 573–74 (2003); *Casey*, 505 U.S. at 851–53; *Roe*, 410 U.S. at 152-54.  Under this precedent, "viability marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions."  *Casey*, 505 U.S. at 860.  For that reason, "[t]he woman's right to terminate her pregnancy before viability is the most central principle of *Roe v. Wade*."  *Id.* at 871.  "It is a rule of law and a component of liberty [courts] cannot renounce."  *Id.*  The Supreme Court has noted that: "The viability line . . . has, as a practical matter, an element of fairness.  In some broad sense it might be said that a woman who fails to act before viability has consented to the State's intervention on behalf of the developing child."  *Id.* at 870.  The same cannot be said of a prohibition on abortion at six weeks of pregnancy, before many people even recognize that they are pregnant. *See supra* at 10.

In accordance with this binding precedent, federal courts across the country, including the Fifth Circuit, have held that so-called "heartbeat bans," which prohibit abortion beginning at approximately six weeks LMP, are unconstitutional.  *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246, 248 (5th Cir. 2020) (per curiam) (affirming entry of a preliminary injunction against enforcement of a Mississippi statute banning abortion "after a fetal heartbeat has been detected"); *Planned Parenthood S. Atl. v. Wilson*, 26 F.4th 600, 606 (4th Cir. 2022) (affirming entry of a preliminary injunction against enforcement of a South Carolina statute "that bans

abortions after an ultrasound detects a 'fetal heartbeat'—usually around the sixth week of pregnancy, and well before the 'viability threshold' protected by the Fourteenth Amendment to the federal Constitution"); *MKB Mgm't Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015) ("Because there is no genuine dispute that [a North Dakota "heartbeat ban"] generally prohibits abortions before viability—as the Supreme Court has defined that concept—and because we are bound by Supreme Court precedent holding that states may not prohibit pre-viability abortions, we must affirm the district court's grant of summary judgment to the plaintiffs."); *SisterSong Women of Color Reprod. Just. Collective v. Kemp*, 472 F. Supp. 3d 1297, 1312–14 (N.D. Ga. 2020) (entering summary judgment against a Georgia statute that, "by prohibiting a woman from terminating her pregnancy upon the detection of a fetal heartbeat, constitute[d] a pre-viability abortion ban"), *appeal filed*, No. 20-13024 (11th Cir. Aug. 11, 2020); *Memphis Ctr. for Reprod. Health v. Slatery*, No. 3:20-CV-00501, 2020 WL 4274198, at *16 (M.D. Tenn. July 24, 2020) (preliminarily enjoining enforcement of a Tennessee statutory provision banning abortion from "six weeks gestational age (unless there is no fetal heartbeat) through 24 weeks gestational age"), *aff'd*, 14 F.4th 409 (6th Cir. 2021), *rehearing en banc granted*, 18 F.4th 550 (6th Cir. 2021); *Preterm-Cleveland v. Yost*, 394 F. Supp. 3d 796, 799, 804 (S.D. Ohio 2019) (preliminarily enjoining an Ohio statute that "bans abortion care at and after approximately six weeks in pregnancy" based on the presence of fetal cardiac activity).

Here, there can be no genuine dispute that S.B. 8 prohibits all nontherapeutic abortions during a period of pregnancy when viability is not possible. *See supra* at 4-5. Accordingly, S.B. 8 violates the right to abortion protected by the Due Process Clause of the Fourteenth Amendment. *See Texas*, 2021 WL 4593319, at *35-36.

17

Application of the undue burden standard yields the same conclusion. *See Casey*, 505 U.S. at 877-78. Like the spousal notification provision struck down in *Casey*, S.B. 8 is "likely to prevent a significant number of women from obtaining an abortion." *Id.* at 893. "It does not merely make abortions a little more difficult or expensive to obtain; for many women, it will impose a substantial obstacle." *Id.* at 893-94; *see supra* at 10-11. Data published by the Texas Health and Human Services Commission confirms the Act's impact on Texans seeking abortion care. After S.B. 8 took effect, the number of patients obtaining abortions in Texas dropped by approximately sixty percent. *Supra* at 11. Thus, for a majority of Texas abortion patients, the obstacles S.B. 8 poses to abortion access are not just substantial; they are insurmountable. Because "in a large fraction of the cases in which [S.B. 8] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion[,] [i]t is an undue burden, and therefore invalid." *Casey*, 505 U.S. at 895.

For the foregoing reasons, Plaintiffs are entitled to a declaration that S.B. 8's abortion ban is unenforceable because it violates the fundamental right to abortion protected by the Due Process Clause of the Fourteenth Amendment.

> ### B.     The Enforcement Scheme Violates Plaintiffs' Right to Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). At a minimum, procedural due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v.*

*Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  In a given case, courts must evaluate the adequacy of procedural safeguards by balancing the interests identified in *Mathews*.  *See Walsh v. Hodge*, 975 F.3d 475, 482 (5th Cir. 2020) (citing *Mathews*, 424 U.S. at 335).  In particular, courts must balance (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."  *Id.* (quoting *Mathews*, 424 U.S. at 335).  "The existence of post-deprivation remedies through further administrative hearings, judicial review, or independent state-law based causes of action are irrelevant to the question of what constitutes adequate hearing procedures, when the deprivation occurs in a non-random, state-authorized hearing convened pursuant to 'established state procedures.'"  *Cuellar v. Tex. Emp. Comm'n*, 825 F.2d 930, 936 (5th Cir. 1987) (quoting *Logan*, 455 U.S. at 434).

Here, defendants in S.B. 8 enforcement proceedings have a protected property interest in avoiding the imposition of a monetary judgment against them, Tex. Health & Safety Code § 171.208(b)(2)-(3), as well as a protected liberty interest in avoiding a mandatory injunction that would "prevent [them] from violating [the six-week abortion ban] or engaging in acts that aid or abet violations of [the six-week abortion ban]," *id.* § 171.208(b)(1).  *See Logan*, 455 U.S. at 429. These interests are substantial.  With respect to the property interest, S.B. 8 requires unsuccessful defendants in S.B. 8 enforcement proceedings to pay a minimum of $10,000 for each prohibited abortion that they provided, aided, or abetted, as well as the plaintiff's litigation costs and attorney's fees.  Tex. Health & Safety Code § 171.208(b)(2)-(3).  This massive and unlimited liability would be devastating for many defendants, including the Plaintiffs in this action.  The

liberty interest at stake is also substantial. Enjoining abortion funds and/or their donors, employees, and volunteers from providing financial support to Texans seeking abortions after six weeks LMP would prevent them from engaging in activism that they believe to be a moral imperative. *See* Davis Decl. ¶¶ 2, 10-11; Mehl Decl. ¶¶ 3, 7-9; Sadler Decl. ¶¶ 4-6.

Next, the risk of an erroneous deprivation of the property and liberty interests of S.B. 8 defendants through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards weighs heavily in favor of finding S.B. 8 unconstitutional. For example, the statute affords state court judges no discretion to transfer the venue of S.B. 8 cases without the claimant's consent, no matter how much prejudice the defendant faces. *See* Tex. Health & Safety Code § 171.210(b); *supra* at 6. An S.B. 8 defendant can be sued in a distant venue with no connection to the events giving rise to the claim, or in multiple venues across the state simultaneously, making it difficult and expensive for the defendant to appear, produce witnesses, and mount a complete defense. *See supra* at 6. A provision permitting a defendant to seek a change of venue for good cause would reduce the risk of an erroneous deprivation significantly.

In addition, the statute's fee-shifting provision only permits attorney's fees to be shifted one way, from claimants to defendants, and it lacks any limitation as to the reasonableness or necessity of the fees. Tex. Health & Safety Code § 171.208(b)(3). The provision therefore exerts pressure on S.B. 8 defendants to settle claims even if they are not meritorious, rather than contest a claim or the validity of S.B. 8 itself and risk increased liability for the claimant's attorney's fees.

Moreover, S.B. 8 eliminates or limits key defenses that are necessary to ensure the fundamental fairness of the proceedings. *See* Tex. Health & Safety Code §§ 171.208(e)-(f-1), 171.209; *supra* at 7. Notably, S.B. 8 defendants may not defend themselves on the ground that they were acting pursuant to a valid court order or that their conduct was authorized by U.S.

Supreme Court precedents.  *See supra* at 7.  The risk of an erroneous deprivation of liberty and property interests based on the inability to raise these defenses in an S.B. 8 proceeding cannot be overstated.

      With respect to the third *Mathews* factor, Texas has no valid interest in eliminating motions for change of venue based on good cause, making defendants bear disproportionate financial risk, or suppressing defenses that rely on federal court orders or the federal Constitution.  The cumulative effect of these inadequate procedures is to rig S.B. 8 proceedings against defendants and all but ensure erroneous deprivation of their property and liberty interests.

      Further, S.B. 8 threatens to violate Plaintiffs' due process rights for an additional reason. "The Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (quoting *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 454 (1993)).  "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Id.* at 574.  This requires, at a minimum, that a damages award be (1) proportionate to the degree of reprehensibility of a defendant's conduct; (2) proportionate to the actual harm inflicted on the plaintiff; and (3) comparable to remedies awarded in similar cases. *Id.* at 575.

      S.B. 8 violates these principles because it places no limits on the amount of damages that may be awarded to a claimant, and it identifies no criteria for courts to use in determining damage awards. *See supra* at 6.  It provides only that a court "shall award . . . statutory damages in an amount of not less than $10,000 . . . for each abortion performed or induced in violation of this subchapter that the defendant aided or abetted."  Tex. Health & Safety Code § 171.208(b)(2).

Thus, someone who donates ten dollars to an abortion fund can be held liable for a minimum of $10,000 and possibly much more, even if the plaintiff suffered no actual harm, with no statutory guideposts for a court to follow when imposing damages. Plainly, S.B. 8's penalty scheme is "grossly excessive" and fails to provide fair notice of the extent of monetary liability that Plaintiffs would face in an S.B. 8 action brought by Defendants. *BMW*, 517 U.S. at 562, 574.

Accordingly, Plaintiffs are entitled to a declaration that S.B. 8's enforcement scheme violates the requirements of procedural due process embodied in the Due Process Clause of the Fourteenth Amendment.

### C.       *Section 3 Violates Plaintiffs' Freedom of Expressive Association*

The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000). Government actions that may infringe on the freedom of expressive association "can take a number of forms." *Roberts*, 468 U.S. at 622. "Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group . . . ." *Id.*

"The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Boy Scouts of Am.*, 530 U.S. at 648. Abortion funds satisfy this criterion. The Stigma Relief Fund, for example, intends to convey a message to its clients that they are not alone and their decision to have an abortion should not be stigmatized. Sadler Decl. ¶ 6. It also intends to convey a message to policymakers and the general public that all people deserve access

to safe abortion care regardless of their background or circumstances.  *Id.*  The individual Plaintiffs share the desire to convey these messages and want to work through the Stigma Relief Fund and other Texas abortion funds to achieve their goals.  *Id.*; Davis Decl. ¶ 10; Mehl Decl. ¶ 9.

Plaintiffs' ability to associate with one another, as well as with other like-minded individuals and organizations for the purpose of providing support and affirmation to abortion patients and advocating for abortion rights is hampered by Defendants' threats to sue abortion funds and their donors, employees, and volunteers under S.B. 8.  *See supra* at 11-12.  Because of these threats and the risk of liability they portend, Plaintiffs Sadler and Mehl have ceased making donations to Texas abortion funds, and other donors and prospective donors will be chilled from contributing, as well.  Mehl Decl. ¶ 17; Sadler Decl. ¶ 18.  Moreover, the Stigma Relief Fund is no longer providing support to pregnant individuals seeking abortion care in Texas after six weeks LMP.  Sadler Decl. ¶ 17.

This infringement on Plaintiffs' freedom of expressive association is not justified "by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  *Boy Scouts of Am.*, 530 U.S. at 648 (quoting *Roberts*, 468 U.S. at 623).  Critically, S.B. 8's abortion ban fails to serve a compelling state interest.  Texas cannot have a compelling interest in banning the provision or facilitation of abortions that are protected by the federal Constitution.  *See* U.S. Const. art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

Moreover, S.B. 8 is aimed at the suppression of ideas.  On its face, it targets those who facilitate the exercise of constitutional rights for draconian penalties and empowers anti-abortion

advocates like Defendants to thwart the activism of their ideological opponents. *Contra Roberts*, 468 U.S. at 623 ("On its face, the Minnesota Act does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria.").

Accordingly, Plaintiffs are entitled to a declaration that Section 3 of S.B. 8 is unenforceable because it violates the freedom of expressive association protected by the First Amendment.

### III. Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 4 of S.B. 8

#### A. The Fee-Shifting Scheme Violates Plaintiffs' Freedom of Speech

It is well-settled that public-interest litigation is a form of protected First Amendment activity. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) ("There can be little doubt that the [Legal Services Corporation] Act funds constitutionally protected expression . . . ."); *In re Primus*, 436 U.S. 412, 431 (1978) ("The ACLU engages in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public."); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971) ("[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."); *NAACP v. Button*, 371 U.S. 415, 429–30 (1963) ("In the context of NAACP objectives, litigation is . . . a form of political expression. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances."). Plaintiffs' efforts to challenge the constitutionality of Texas statutes restricting access to abortion in service of their broader political objectives to promote abortion rights and ensure equitable access to abortion care fall squarely within the zone of protection.

It is "a core postulate of free speech law" that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019); *accord Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed." (citations omitted)). "A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991). "In the context of financial regulation, . . . the government's ability to impose content-based burdens on speech raises the specter that the government may effectively drive certain ideas or viewpoints from the marketplace." *Id.* at 116 (citing *Leathers v. Medlock*, 499 U.S. 439, 448–49 (1991)). "The First Amendment presumptively places this sort of discrimination beyond the power of the government." *Id.* In determining whether a law that targets certain speakers for financial burdens violates the First Amendment, a court need not consider the motives of lawmakers. *Id.* at 117 (rejecting the argument that "discriminatory financial treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas").

Section 4 of S.B. 8 is presumptively unconstitutional because its one-way fee-shifting scheme singles out for financial liability litigants and attorneys who assert in litigation that Texas laws restricting abortion are unconstitutional or otherwise unenforceable. *See* Tex. Civ. Prac. & Rem. Code § 30.022; *supra* at 8-9. Moreover, Section 4 cannot satisfy strict scrutiny because it is not narrowly tailored to serve any compelling state interest. *See In re Primus*, 436 U.S. at 432–

33.  It is analogous to the law struck down in *Velazquez*, which barred attorneys seeking to challenge the validity of welfare laws from participation in a government-funded legal-services program. *Velazquez,* 531 U.S. at 538.  There, the Supreme Court explained that "[t]he attempted restriction [was] designed to insulate the Government's interpretation of the Constitution from judicial challenge." *Id.* at 548.  It held that "[t]he Constitution does not permit the Government to confine litigants and their attorneys in this manner." *Id.*

Consequently, Plaintiffs are entitled to a declaration that Section 4 of S.B. 8 is unenforceable because it violates the First Amendment.

### B.        The Fee-Shifting Scheme Is Preempted by Section 1988

Under the Supremacy Clause, when "state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617–18 (2011) (citation and internal quotation marks omitted).   Such conflict occurs "when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'"  *United States v. Locke*, 529 U.S. 89, 109 (2000) (citing *California v. ARC Am. Corp.*, 490 U.S. 93, 100-101 (1989)); *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011); *see also United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

In 42 U.S.C. § 1988, Congress carefully determined how attorney's fees are to be allocated in federal civil-rights actions, regardless of whether those claims are raised in state or federal court. Section 1988 provides that, in "any action" to enforce Section 1983 and other covered civil rights statutes, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  This provision grants a right to a prevailing plaintiff to "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Lefemine*

26

*v. Wideman*, 568 U.S. 1, 5 (2012) (per curiam); *Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016). But a prevailing defendant in a Section 1983 case may recover attorney's fees from the plaintiff "only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). In all other circumstances, a non-prevailing plaintiff has a right to bring their civil rights claims without risk of incurring the other side's attorney's fees.

Section 4 of S.B. 8 directly conflicts with, and must give way to, Section 1988. Section 4 allows a defendant who loses an abortion-related Section 1983 case to recover fees from a civil-rights plaintiff. *See* Tex. Civ. Prac. & Rem. Code § 30.022(b); *supra* at 8-9. That cannot be reconciled with Section 1988, which permits a defendant in a covered civil-rights case to "recover reasonable attorney's fees" only where the defendant truly prevails, and where such fees are "incurred because of," and "only because of, a frivolous claim" by the civil-rights plaintiff. *Fox v. Vice*, 563 U.S. 826, 836 (2011). Section 4's definition of "prevailing party," Tex. Civ. Prac. & Rem. Code § 30.022(b), also directly conflicts with federal law. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001) (holding that "prevailing party" is a "term of art" that requires at least some "alteration in the legal relationship of the parties").

Section 4 would also stand as a substantial obstacle to Congress's goals in adopting Section 1988. It would create massive disincentives for the vindication of constitutional rights and allow even defendants found to have violated federal law to recover fees, contrary to Congress's objectives. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978). Section 4 would also vastly expand the circumstances under which defendants in civil- rights cases may recover fees and costs, and it would do so "for a reason manifestly inconsistent with the purposes" of

Section 1988. *Felder v. Casey*, 487 U.S. 131, 141–42 (1988) (holding that a state notice-of-claim requirement was preempted as applied to Section 1983 claims because it aimed "to minimize governmental liability," thus undermining Section 1983's "uniquely federal remedy"); *see also Haywood v. Drown*, 556 U.S. 729, 733–34 (2009) (holding that a state correctional law was preempted where the state "strip[ped] its courts of jurisdiction" over Section 1983 damages claims and instead forced plaintiffs to sue the state directly in a court of claims without access to "the same relief, or the same procedural protections," as would otherwise apply in a Section 1983 case).

Other aspects of Section 4 likewise conflict with Section 1988's fee regime. Section 1988 instructs that a request for attorney's fees must be made in the "action or proceeding to enforce" a federal civil rights statute, including Section 1983, and that the fees, where assessed, are allowed only "as part of the costs." 42 U.S.C. § 1988(b). A motion for fees and costs must be filed within 14 days of the judgment, or it is waived. *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998), *decision clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999); *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996). In contrast, S.B. 8's cause of action for fees and costs may be brought in an entirely new proceeding before a different judge within three years of any substantive claim resolution. Tex. Civ. Prac. & Rem. Code § 30.022(c). In that collateral lawsuit, it would "not [be] a defense" that the party filing the lawsuit did not "seek recovery of costs or attorney's fees in the underlying action" giving rise to the fee liability, or that the court in the underlying action held Section 4 "invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion." *Id.* § 30.022(d).

Courts considering other state laws that govern the imposition of attorney's fees and costs in favor of prevailing defendants have likewise held those laws preempted by Section 1988 or analogous federal fee-shifting provisions. *See, e.g.*, *State v. Golden's Concrete Co.*, 962 P.2d 919,

28

926 (Colo. 1998) (en banc) (concerning the interplay between a Section 1983 claim and a state rule that permitted a prevailing defendant to recoup fees in circumstances other than where the plaintiff's action was "frivolous, unreasonable or without foundation" (citation omitted)); *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 746–47 (9th Cir. 2009) (holding that a mandatory award of fees to prevailing defendants under the California Disabled Persons Act was inconsistent with, and therefore preempted by, the fee-shifting standard applicable to the Americans with Disabilities Act).

Accordingly, Plaintiffs are entitled to a declaration that, with respect to claims brought under 42 U.S.C. § 1983, Section 4 of S.B. 8 is preempted by 42 U.S.C. § 1988.

## IV. Plaintiffs Are Entitled to a Declaration That the Criminal Abortion Ban Cannot Be Enforced Against Them

Rep. Cain's calls for Texas abortion funds and their associates to be prosecuted under the Criminal Abortion Ban for facilitating access to previability abortion care are having a chilling effect on the activities of abortion funds and their donors, employees, and volunteers, including Plaintiffs.  Mehl Decl. ¶ 17; Sadler Decl. ¶¶ 16-18.  But they are based on a faulty legal premise.

The U.S. Constitution is the "supreme Law of the Land," U.S. Const. art. VI, and the U.S. Supreme Court is the final authority on the meaning of the U.S. Constitution, *see Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958).  State officials are therefore obligated to follow the U.S. Supreme Court's interpretation of the U.S. Constitution.  *Id.* at 4 (rejecting the argument "that there is no duty on state officials to obey federal court orders resting on this Court's considered interpretation of the United States Constitution").

In *Cooper v. Aaron*, the Supreme Court declared that "the interpretation of the Fourteenth Amendment enunciated in [*Brown v. Board of Education*, 347 U.S. 483 (1954),] is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States 'any Thing in the Constitution or Laws of any States to the Contrary notwithstanding.'"  358 U.S. at 18

29

(quoting U.S. Const. art. VI).  So too with *Roe v. Wade*.  Texas officials, including Rep. Cain and criminal prosecutors, may not ignore the Supreme Court's holding in *Roe*—that the Criminal Abortion Ban violates the Fourteenth Amendment of the U.S. Constitution—which renders the ban unenforceable.  *See Roe*, 410 U.S. at 166.  This is true notwithstanding that the relief granted in *Roe* was declaratory rather than injunctive in nature and that only a single prosecutor was named as a defendant.  *See id.*  "[A] federal declaration of unconstitutionality reflects the opinion of the federal court that the statute cannot be fully enforced."  *Steffel*, 415 U.S. at 469–70.   "If a declaration of total unconstitutionality is affirmed by [the Supreme] Court, it follows that [the Supreme] Court stands ready to reverse any conviction under the statute."  *Id.* at 470.

Accordingly, Plaintiffs are entitled to a declaration that the Criminal Abortion Ban cannot be lawfully enforced by any Texas official because the Supreme Court has held that it is unconstitutional.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion for summary judgment in its entirety.

Dated:  April 25, 2022

Respectfully submitted,

<u>/s/ Stephanie Toti</u>

<table>
<tr><td>Stephanie Toti</td><td>Dorian Vandenberg-Rodes</td></tr>
<tr><td>New York Bar No. 4270807</td><td>Texas Bar No. 24088573</td></tr>
<tr><td>Juanluis Rodriguez*</td><td>SHELLIST LAZARZ SLOBIN LLP</td></tr>
<tr><td>New York Bar No. 5543194</td><td>11 Greenway Plaza, Suite 1515</td></tr>
<tr><td>Sneha Shah*</td><td>Houston, TX 77046</td></tr>
<tr><td>New York Bar No. 5345491</td><td>Phone: (713) 621-2277</td></tr>
<tr><td>LAWYERING PROJECT</td><td>Fax: (713) 621-0993</td></tr>
<tr><td>41 Schermerhorn Street, No. 1056</td><td>drodes@eeoc.net</td></tr>
<tr><td>Brooklyn, NY 11201</td><td></td></tr>
<tr><td>Phone: (646) 490-1083</td><td></td></tr>
<tr><td>Fax: (646) 480-8622</td><td></td></tr>
<tr><td>prodriguez@lawyeringproject.org</td><td></td></tr>
<tr><td>stoti@lawyeringproject.org</td><td></td></tr>
<tr><td>sshah@lawyeringproject.org</td><td></td></tr>
</table>

<table>
<tr><td>Rupali Sharma*</td><td>Tanya Pellegrini*</td></tr>
<tr><td>Maine Bar No. 006192</td><td>LAWYERING PROJECT</td></tr>
<tr><td>LAWYERING PROJECT</td><td>California Bar No. 285186</td></tr>
<tr><td>113 Bonnybriar Road</td><td>584 Castro Street, No. 2062</td></tr>
<tr><td>South Portland, ME 04106</td><td>San Francisco, CA 94114</td></tr>
<tr><td>Phone: (908) 930-6645</td><td>Phone: (646) 480-8973</td></tr>
<tr><td>Fax: (646) 480-8622</td><td>Fax: (646) 480-8622</td></tr>
<tr><td>rsharma@lawyeringproject.org</td><td>tpellegrini@lawyeringproject.org</td></tr>
</table>

Melissa C. Shube
District of Columbia Bar No. 241034
LAWYERING PROJECT
712 H Street NE, Suite 1616
Washington, DC 20002
Phone: (646) 480-8942
Fax: (646) 480-8622
mshube@lawyeringproject.org

*Admitted pro hac vice*

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 25, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Stephanie Toti*
Stephanie Toti