UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Wendy Davis**, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>**Mistie Sharp**, et al.,<br><br>                    Defendants. | Case No. 1:22-cv-00373-RP |

**MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER
JURISDICTION, LACK OF VENUE, AND FAILURE TO STATE A
CLAIM ON WHICH RELIEF MAY BE GRANTED**

# TABLE OF CONTENTS

Table of contents ................................................................................................. i

Table of authorities ............................................................................................ iii

Background ........................................................................................................... 1

Facts regarding the defendants ........................................................................ 5

   I.  Briscoe Cain ............................................................................................ 5

   II. Mistie Sharp ........................................................................................... 6

   III.Sadie Weldon and Ashley Maxwell .................................................... 7

Argument .............................................................................................................. 9

   I.  The claims against each defendant should be dismissed for lack of subject-matter jurisdiction ............................................................... 9

      A.  Defendant Briscoe Cain is entitled to sovereign immunity ..................... 9

      B.  Each of the claims should be dismissed for lack of Article III standing ................................................................................... 10

      C.  The plaintiffs lack Article III standing to request relief that would protect non-parties to this lawsuit ...................................... 12

   II. The claims asserted against Representative Cain are improperly joined with the claims asserted against Ms. Sharp, Ms. Weldon, and Ms. Maxwell ................................................................................ 14

   III.The case should be dismissed for improper venue ....................... 15

   IV. The plaintiffs fail to state a claim on which relief may be granted .............. 18

      A.  The plaintiffs lack third-party standing to assert the constitutional rights of abortion patients .................................................. 18

      B.  The plaintiffs lack a cause of action to assert the substantive-due-process rights of abortion patients because neither 42 U.S.C. § 1983 nor the Declaratory Judgment Act permits plaintiffs to assert a third party's rights ............................................................................... 19

         1.  The cause of action established in 42 U.S.C. § 1983 does not authorize plaintiffs to assert the rights of third parties ................. 19

         2.  The cause of action established in the Declaratory Judgment Act does not authorize plaintiffs to assert the rights of third parties ....... 21

      C.  Defendant Briscoe cain is entitled to legislative immunity ................... 22

      D.  The section 1983 claims against defendants Sharp, Weldon, and Maxwell should be dismissed because the plaintiffs have failed to allege that they are acting under color of state law ............................... 23

E.  The First Amendment and Due Process Claims against defendants Sharp, Weldon, and Maxwell should be dismissed because private citizens cannot violate the Constitution ................................................. 26

F.  Senate Bill 8 does not violate *Roe* or *Casey* because it explicitly incorporates the undue-burden standard and prevents courts from imposing liability on constitutionally protected conduct ....................... 27

G.  There is no constitutional right to pay for another person's abortion or contribute money to an abortion fund ............................................. 28

H.  Requiring the plaintiffs to pay the defendants' costs and attorneys' fees if the defendants prevail in this litigation does not violate the First Amendment or 42 U.S.C. § 1988 ................................................. 29

I.  The plaintiffs' procedural due process claim is meritless ........................ 31

Conclusion .............................................................................................. 31

Certificate of service ............................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009) ................................. 16

*Archuleta v. McShan*, 897 F.2d 495 (10th Cir. 1990) ........................................... 21

*Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976) .................................................... 21

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) .............................................................. 22

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) ................................................ 30

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ............................................ 9

*Civil Rights Cases*, 109 U.S. 3 (1883) ...................................................................... 26

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... 10

*Connecticut v. Menillo*, 423 U.S. 9 (1975) ................................................................ 4

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) .................................................. 20

*Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974) ..................................................... 14

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ....................................................... 13

*Ex parte Stephens*, --- S.W.3d ----, 2021 WL 5917198 (Tex. Crim. App.) ............................................................................................................................. 9

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................... 9

*Franchise Tax Board v. Construction Laborers Vacation Trust*,
463 U.S. 1 (1983) ....................................................................................................... 26

*Garrett v. Clarke*, 147 F.3d 745 (8th Cir. 1998) ..................................................... 21

*Gras v. Stevens*, 415 F. Supp. 1148 (S.D.N.Y. 1976) ............................................. 23

*Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001) .................................................. 23

*Gutierrez v. Drill Cuttings Disposal Company, LLC*,
319 F. Supp. 3d 856 (W.D. Tex. 2018) ............................................................... 16

*Harris v. McRae*, 448 U.S. 297 (1980) .................................................................... 28

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ..................................... 28

*Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. 1981) .......................... 23

*Howard Gault Co. v. Texas Rural Legal Aid, Inc.*,
848 F.2d 544 (5th Cir. 1988) ........................................................................... 23, 25

*In re Abbott*, 954 F.3d 772 (5th Cir. 2020) ............................................................. 13

*In re Gee*, 941 F.3d 153 (5th Cir. 2019) .................................................................. 12

*June Medical Services LLC v. Russo*, 140 S. Ct. 2103 (2020) ............................ 2, 18

*Kansas v. Garcia*, 140 S. Ct. 791 (2020) ................................................................. 30

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .................................................... 2, 18, 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................ 12

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ....................................................... 30

*Mayfield–George v. Texas Rehabilitation Commission*,
   197 F.R.D. 280 (N.D. Tex. 2000) ........................................................... 8

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) ................................ 24

*McCrary v. Kansas City S.R.R.*,
   121 F. Supp. 2d 566 (E.D. Tex. 2000) ...................................................... 8

*McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997) ................................ 13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ............................................................ 12

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) .................. 9

*Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017) ........................................................ 3

*Planned Parenthood of Greater Ohio v. Hodges*,
   917 F.3d 908 (6th Cir. 2019) ................................................................... 3

*Planned Parenthood of Kansas and Mid-Missouri v. Moser*,
   747 F.3d 814 (10th Cir. 2014) ................................................................... 3

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ............. 2, 27

*Professional Association of College Educators v. El Paso County
   Community College District*, 730 F.2d 258 (5th Cir. 1984) ............................. 14

*Rizzo v. Goode*, 423 U.S. 362 (1976) ................................................................ 20

*Roe v. Wade*, 410 U.S. 113 (1973) ........................................................ 2, 10, 18, 27

*Schneider Granite Co. v. Gast Realty & Investment Co.*,
   245 U.S. 288 (1917) ............................................................................. 4

*Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977) ................................................. 21

*Singleton v. Wulff*, 428 U.S. 106 (1976) ........................................................ 2, 18

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ................................ 26

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ................................ 10, 11, 12

*Stevens v. Frick*, 372 F.2d 378 (2d Cir. 1967) ........................................................ 23

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*,
   446 U.S. 719 (1980) ............................................................................. 22

*United States v. Cruikshank*, 92 U.S. 542 (1875) ................................................. 26

*United States v. National Treasury Employees Union*,
   513 U.S. 454 (1995) ............................................................................. 13

*United States v. Texas*, No. 1:21-cv-00796-RP (W.D. Tex.) ............................... 6, 16

*Virginia v. Hicks*, 539 U.S. 113 (2003) ................................................................ 4

*Warth v. Seldin*, 42 U.S. 490 (1975) ................................................................ 10

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................... 19

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................... 10, 12

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ........................ 3

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ............... passim

*Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) .......................................... 13

**Statutes**

15 U.S.C. § 77z-1(c)(3) ........................................................................... 29

28 U.S.C. § 1391(b)(2) ............................................................................ 16

42 U.S.C. § 1988 ................................................................ 11, 12, 29, 30

42 U.S.C. § 1988(b) ........................................................................ 11, 12

Senate Bill 8, 87th Leg. ............................................................................. 1

Senate Bill 8, 87th Leg., § 2 ..................................................................... 2

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) ........................................ 29

Tex. Gov't Code § 311.032(c) .................................................................. 4

Tex. Gov't Code § 311.036(c) .................................................................. 4

Tex. Health & Safety Code § 171.207 ..................................................... 1

Tex. Health & Safety Code § 171.207(a) ................................................ 5

Tex. Health & Safety Code § 171.208(g) ............................................... 29

Tex. Health & Safety Code § 171.208(j) .................................................. 1

Tex. Health & Safety Code § 171.209(b) ............................................... 27

Tex. Penal Code § 7.03(2) ........................................................................ 3

West's Texas Civil Statutes, article 4512.2 (1974) ................................. 1

West's Texas Civil Statutes, article 4512.6 (1974) ................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 1

Fed. R. Civ. P. 12(b)(3) ............................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1

Fed. R. Civ. P. 12(d) ................................................................................ 26

Fed. R. Civ. P. 20(a)(2) ........................................................................... 15

Tex. R. Civ. P. 91a7 ............................................................................ 29

**Other Authorities**

Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657 (2004) ........................................................ 13

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41 ............ 20, 22

Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991) ................................................................ 13

Nicholas Quinn Rosenkranz, *The Subjects of the Constitution*, 62 Stan. L. Rev. 1209 (2010) ........................................................ 27

The defendants respectfully move to dismiss the claims against them for lack of subject-matter jurisdiction, lack of venue, and failure to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (b)(3), (b)(6).

## BACKGROUND

The law of Texas restricts abortion in numerous ways. The Texas Heartbeat Act, also known as Senate Bill 8 or SB 8, prohibits abortion after a fetal heartbeat is detectable and authorizes private civil-enforcement suits against anyone who performs or "aids or abets" a post-heartbeat abortion. *See* Senate Bill 8, 87th Leg. (attached as Exhibit 1). SB 8 prohibits enforcement by public officials and leaves enforcement entirely in the hands of private citizens, which has frustrated efforts to obtain pre-enforcement relief against the statute's enforcement. *See* Tex. Health & Safety Code § 171.207; *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021); *Whole Woman's Health v. Jackson*, 642 S.W.3d 569 (Tex. 2022). Anyone who violates SB 8 can be sued by "any person"[1] and ordered to pay at least $10,000 in statutory damages for each post-heartbeat abortion that they performed or facilitated, plus costs and attorneys' fees. Senate Bill 8 took effect on September 1, 2021, and it has remained in effect since that time.

The law of Texas also imposes felony criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended"—regardless of whether the abortion occurs before or after a fetal heartbeat is detectable. *See* West's Texas Civil Statutes, article 4512.2 (1974) (attached as Exhibit 2).[2] Violations of article 4512.2 are punishable by two to five years imprisonment per abortion, and the

---

1. Except Texas government officials and individuals who impregnated the mother of the unborn child through rape or some other illegal act. *See* Tex. Health & Safety Code §§ 171.208(a); 171.208(j).

2. The full text of the statute says: "Whoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice." West's Texas Civil Statutes, article 4512.2 (1974).

statute of limitations is three years.[3] Texas has never repealed this statute, and the legislature re-affirmed the continuing vitality of article 4512.2 when it enacted Senate Bill 8 last year. *See* Senate Bill 8, 87th Leg., § 2 ("[T]he State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger.") (attached as Exhibit 1).

The Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), currently prevent Texas officials from enforcing article 4512.2 (and other provisions of the state's criminal abortion statutes) against abortion providers. But there is no constitutional obstacle to enforcing article 4512.2 against abortion funds and their donors, even while *Roe* and *Casey* remain on the books. Abortion funds and their donors do not have standing to assert the third-party rights of women seeking abortions as a defense to criminal prosecution. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (citation omitted)).[4] And in all events, a woman seeking an abortion has no constitutional right to have other people pay for it, *see Harris v. McRae*, 448 U.S. 297, 325 (1980), so no abortion patient will

---

3. The only exception is for abortions "procured or attempted by medical advice for the purpose of saving the life of the mother." West's Texas Civil Statutes, article 4512.6 (1974).

4. The Supreme Court has allowed abortion doctors and abortion providers to assert the third-party rights of abortion patients, but no court has ever held that an abortion fund (or a donor to such a fund) has the necessary "close relation" needed to establish third-party standing. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (plurality opinion) (allowing *physicians* to assert third-party rights of their patients seeking abortions on account of the "patent" "closeness of the relationship"); *June Medical Services LLC v. Russo*, 140 S. Ct. 2103, 2118 (2020) (plurality opinion) ("We have long permitted abortion *providers* to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." (emphasis added)).

suffer an "undue burden" if abortion funds and their donors are prosecuted for vio-lating article 4512.2.[5] There is also no constitutional right to perform or pay for an-other person's abortion; that is why abortion providers who challenge abortion regu-lations must invoke the third-party rights of their patients rather than assert their own constitutional rights. *See, e.g.*, *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 912 (6th Cir. 2019) (en banc) ("The Supreme Court has never identified a free-standing right to perform abortions. To the contrary, it has indicated that there is no such thing."). Nor will the abortionist's immunity from prosecution on account of *Roe* preclude the imposition of accomplice liability on abortion funds and others who violate section 4512.2. *See* Tex. Penal Code § 7.03(2).

Yet abortion funds in Texas flout article 4512.2 with impunity, apparently un-aware of its continued existence, or perhaps laboring under a belief that article 4512.2 was somehow "struck down" by the Supreme Court in *Roe v. Wade*, 410 U.S. 113 (1973).[6] But courts do not have the ability or the authority to formally revoke statutes when pronouncing them unconstitutional. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("We note that neither the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* 'struck down' any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it"). More importantly, the severability provisions in Texas law preserve all

---

5. *See also Planned Parenthood of Kansas and Mid-Missouri v. Moser*, 747 F.3d 814, 826 (10th Cir. 2014) ("There is a qualitative difference between prohibiting an activity and refusing to subsidize it. The Supreme Court, for instance, has drawn that line in rejecting state laws prohibiting certain abortions but not laws refusing to provide funds for the practice.").

6. *See, e.g.*, Complaint, ECF No. 1, at ¶ 84 ("The Criminal Abortion Ban cannot be lawfully enforced because, in *Roe v. Wade*, 410 U.S. 113 (1973), the U.S. Supreme Court held that it was unconstitutional.").

constitutional applications of the state's pre-*Roe* abortion statutes, allowing them to be enforced in situations that do not violate the constitutional rights of abortion patients. *See* Tex. Gov't Code § 311.032(c); Tex. Gov't Code § 311.036(c); *Virginia v. Hicks*, 539 U.S. 113, 121 (2003) ("Severab[ility] is of course a matter of state law."); *Schneider Granite Co. v. Gast Realty & Investment Co.*, 245 U.S. 288, 290 (1917) ("[T]he severability of a statute of the state . . . is a question of state law."); *see also Connecticut v. Menillo*, 423 U.S. 9, 9–10 (1975) (allowing Connecticut to enforce its pre-*Roe* criminal abortion statutes against non-physician abortions). So article 4512.2 remains fully enforceable against abortion funds that pay for abortions performed in Texas, as well as their employees, volunteers, board members, and donors, despite the continued existence of *Roe* and *Casey*.

Each of the plaintiffs has violated article 4512.2, and in doing so they have exposed themselves—as well as their employees, volunteers, board members, and donors—to felony criminal prosecution. Plaintiff Wendy Davis admits that she has given money to the Lilith Fund for Reproductive Equity, and in doing so she has violated article 4512.2 by "furnishing the means for procuring an abortion knowing the purpose intended." *See* Complaint, ECF No. 1, at ¶ 14. Plaintiff Marva Sadler donates money to the Stigma Relief Fund, another organization that pays for abortions in Texas in violation of article 4512.2, and she chairs its board of directors. *See id*. at ¶ 15. Sadler also donates money to "other Texas abortion funds," which violates article 4512.2 by "furnishing the means for procuring an abortion knowing the purpose intended." *See id*. Plaintiff Sean Mehl donates money to numerous Texas abortion funds, in violation of article 4512.2, and also serves on the Stigma Relief Fund's board of directors. *See id*. at ¶ 16. And plaintiff Stigma Relief Fund admits that it provides financial support to patients seeking abortion in Texas, which violates article 4512.2. *See id*. at ¶ 17.

At the same time, none of the plaintiffs appear to have violated Senate Bill 8 — or, if they have, they have not alleged this in their complaint. The Stigma Relief Fund claims that it pays for abortions in Texas *only* when those abortions occur before six weeks LMP, so it has not (according to the complaint) violated SB 8 or exposed itself to private civil-enforcement lawsuits. *See id.* at ¶ 17 ("[T]he Stigma Relief Fund has ceased providing financial assistance to Texas patients beyond six weeks LMP unless they travel out of state to obtain abortion[s]."). Sadler's and Mehl's involvement with the Stigma Relief Fund does not violate SB 8 either, absent an allegation that the Stigma Relief Fund has financed or assisted post-heartbeat abortions performed in Texas. *See id.* at ¶¶ 15–16. Sadler and Mehl also claim that they donate money to "other Texas abortion funds," but that does not violate SB 8 unless those abortion funds have aided or abetted post-heartbeat abortions in Texas — and the complaint does not identify the unnamed funds that receive Sadler's and Mehl's donations or say whether any of those funds have paid for abortions in violation in SB 8. *See id.* at ¶¶ 15–16. Davis is the only plaintiff that admits an affiliation with an abortion fund that has violated SB 8. *See id.* at ¶ 14. But it is *still* not clear from the complaint whether Davis herself has violated SB 8 because the complaint does not say whether Davis's donations to the Lilith Fund were used to pay for post-heartbeat abortions.

## FACTS REGARDING THE DEFENDANTS

### I.    Briscoe Cain

Defendant Briscoe Cain, as a state legislator and officer of the state of Texas, is statutorily prohibited from enforcing Senate Bill 8 or filing private civil-enforcement suits under the statute. *See* Tex. Health & Safety Code § 171.207(a); *id.* at § 171.208(a) ("Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person who [violates Senate Bill 8]"); Cain Decl. ¶ 7 (attached as Exhibit 3). So Representative Cain can-

not be sued over any of the claims related to SB 8. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). The plaintiffs have also stipulated that their claims against Representative Cain pertain only to article 4512.2 of the Revised Civil Statutes. *See* Stipulation, ECF No. 35, ¶¶ 1–3.

On March 18, 2022, Representative Cain mailed a letter to the Lilith Fund for Reproductive Equity and other Texas abortion funds. *See* Cain Decl. ¶ 6 & Ex. A. The letter informs the Lilith Fund that article 4512.2 has never been repealed and continues to exist as the law of Texas, and that the Lilith Fund is exposing itself and its employees, volunteers, and donors to criminal prosecution and imprisonment by paying for abortions performed in Texas. *See id*. The letter demands that the Lilith Fund "cease and desist" its criminal activities, and warns that Representative Cain will introduce legislation next session that will empower district attorneys from throughout the state to prosecute violations of article 4512.2 when local district attorneys fail or refuse to do so. *See id*. Representative Cain did not send this letter, or any other correspondence, to the Stigma Relief Fund or the attorneys representing the Stigma Relief Fund in this litigation. *See id*. ¶ 8. Representative Cain mailed these letters in his capacity as a state legislator, and his promise to introduce legislation to expand the authority of district attorneys to prosecute abortion-related crimes was a legislative activity taken in his capacity as a state legislator. *See id*. at ¶ 9 & Ex. B.

## II.    Mistie Sharp

Defendant Mistie Sharp intervened in *United States v. Texas*, No. 1:21-cv-00796-RP (W.D. Tex.), to protect her state-law right to sue abortion funds that violate Senate Bill 8. *See* Sharp Decl. ¶ 7 (attached as Exhibit 4). Ms. Sharp has no intention, and never had any intention, of suing Wendy Davis, Marva Sadler, Sean Mehl, or the Stigma Relief Fund under the private civil-enforcement lawsuits described in Senate Bill 8. *See id*. at ¶ 5. She is interested in suing only abortion *funds*—the actual entities

rather than the individuals—that pay for abortions in violation of Senate Bill 8, and the Stigma Relief Fund does not allege or claim that it has ever paid for an illegal post-heartbeat abortion in Texas or aided or abetted such an abortion. *See id.* at ¶¶ 6–7. Ms. Sharp has never threatened to sue any of the plaintiffs under SB 8, either publicly or privately, and she has categorically declared that will not sue any of the four plaintiffs in this case even if they violated SB 8 in the past or violate SB 8 in the future. *See id.* at ¶¶ 9–11; *id.* at ¶ 11 ("I also have no intention of suing Wendy Davis, Marva Sadler, Sean Mehl, or the Stigma Relief Fund in the future even if they engage in conduct that violates Senate Bill 8, and I will not sue them under SB 8's private civil-enforcement mechanism under any circumstance.").

Ms. Sharp is incapable of enforcing a criminal statute such as article 4512.2 as a private citizen, and the plaintiffs have clarified that their claims against Ms. Sharp pertain only to Senate Bill 8 and not article 4512.2. *See* Stipulation, ECF No. 35, ¶¶ 1–3.

## III.   Sadie Weldon and Ashley Maxwell

The plaintiffs claim that that defendants Sadie Weldon and Ashley Maxwell have "initiated proceedings to sue certain Texas abortion funds and their donors, employees, and volunteers under S.B. 8" and "publicly threatened all Texas abortion funds and their associates with civil lawsuits under S.B. 8." Complaint, ECF No. 1, at ¶ 7. Each of these claims is false.

Ms. Weldon has merely filed a Rule 202 petition that seeks to depose Neesha Davé, the deputy director of the Lilith Fund for Reproductive Equity, to ascertain the identity of those who aided or abetted illegal post-heartbeat abortions in Texas. *See* Weldon Decl. ¶ 5 (attached as Exhibit 5). Ms. Maxwell has filed a similar Rule 202 petition that seeks to depose Kamyon Conner, the executive director of the North Texas Equal Access Fund. *See* Maxwell Decl. ¶ 5 (attached as Exhibit 6). A Rule 202

petition is not a lawsuit or a "proceeding to sue"; it is merely a request for pre-suit discovery. *See, e.g.*, *Mayfield–George v. Texas Rehabilitation Commission*, 197 F.R.D. 280, 283–84 (N.D. Tex. 2000) (holding that a Rule 202 proceeding is not a "civil action" because "it asserts no claim or cause of action upon which relief may be granted" and that "[i]t is merely a petition for an order authorizing the taking of a deposition"); *McCrary v. Kansas City S.R.R.*, 121 F. Supp. 2d 566, 569 (E.D. Tex. 2000) (holding that a Rule 202 proceeding is "not a civil action" because "it asserts no claim or cause of action upon which relief can be granted"). Neither Ms. Weldon nor Ms. Maxwell has ever threatened to sue anyone under SB 8. *See* Weldon Decl. ¶ 6; Maxwell Decl. ¶ 6.

Ms. Weldon and Ms. Maxwell have no intention, and never had any intention, of suing Wendy Davis, Marva Sadler, Sean Mehl, or the Stigma Relief Fund under SB 8. *See* Weldon Decl. ¶ 7; Maxwell Decl. ¶ 7. Neither Ms. Weldon nor Ms. Maxwell has ever threatened to sue any of the plaintiffs under SB 8, either publicly or privately, and each of them has categorically declared that they will not sue any of the four plaintiffs in this case even if they violated SB 8 in the past or violate SB 8 in the future. *See* Weldon Decl. ¶¶ 11–13; Maxwell Decl. ¶¶ 11–13; *id.* at ¶ 13 ("I also have no intention of suing Wendy Davis, Marva Sadler, Sean Mehl, or the Stigma Relief Fund in the future even if they engage in conduct that violates Senate Bill 8, and I will not sue them under SB 8's private civil-enforcement mechanism under any circumstance."); Weldon Decl. ¶ 13 (same).

Finally, Ms. Weldon and Ms. Maxwell, like Ms. Sharp, are incapable of enforcing a criminal statute such as article 4512.2 as private citizens, and the plaintiffs have clarified that their claims against Ms. Weldon and Ms. Maxwell pertain only to Senate Bill 8 and not article 4512.2. *See* Stipulation, ECF No. 35, ¶¶ 1–3.

## ARGUMENT

### I. The Claims Against Each Defendant Should Be Dismissed For Lack Of Subject-Matter Jurisdiction

There is no Article III case or controversy between the plaintiffs and any of the defendants. In addition, defendant Briscoe Cain is entitled to sovereign immunity.

#### A. Defendant Briscoe Cain Is Entitled To Sovereign Immunity

Representative Cain is entitled to sovereign immunity as an officer of the state of Texas. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–02 (1984) ("The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" (citations omitted); *id.* ("'[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" (quoting *Hawaii v. Gordon,* 373 U.S. 57, 58 (1963) (*per curiam* )).

The *Ex parte Young* exception to sovereign immunity is inapplicable because Representative Cain has no "connection with the enforcement of" article 4512.2 *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." (emphasis added)); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021); *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Representative Cain has no ability or authority to "enforce" article 4512.2 against the plaintiffs (or anyone else) because article 4512.2 is a criminal statute that can be enforced only by district attorneys and prosecutors. *See Ex parte Stephens*, --- S.W.3d ----, 2021 WL 5917198 (Tex. Crim. App.); *see also* Cain Decl. ¶ 5 ("As a state legislator, I have no connection with the enforcement of article 4512.2 whatsoever."). If the plaintiffs wish to challenge the constitutionality of article 4512.2,

then they must sue a district attorney who is charged with enforcing the statute. *See Roe v. Wade*, 410 U.S. 113 (1973).

**B.     Each Of The Claims Should Be Dismissed For Lack Of Article III Standing**

A plaintiff that sues in federal court must clearly allege facts demonstrating each element of Article III standing—injury in fact, traceability, and redressability. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of *pleading and proving concrete facts* showing that the defendant's actual action has caused the substantial risk of harm." (emphasis added)); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("The litigant *must clearly and specifically set forth facts* sufficient to satisfy these Art. III standing requirements." (emphasis added)); *Warth v. Seldin*, 42 U.S. 490, 518 (1975) ("It is the responsibility of the complainant *clearly to allege facts demonstrating that* he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (emphasis added)). Litigants challenging abortion statutes are not an exception to this rule. Yet the complaint does not even acknowledge or discuss Article III standing, let alone allege facts that "clearly and specifically" show how each element of Article III standing is satisfied. *Whitmore*, 495 U.S. at 155. That alone requires dismissal of the complaint.

The plaintiffs also lack Article III standing because each of the defendants has declared unequivocally that they have no intention of suing the plaintiffs under SB 8 or prosecuting them under article 4512.2, and they never had any such intentions. *See* Sharp Decl. ¶¶ 11–12; Weldon Decl. ¶¶ 13–14; Maxwell Decl. ¶¶ 13–14; Cain Decl. ¶¶ 5, 10. The defendants' declarations are indistinguishable from the declarations submitted by Mark Lee Dickson in *Whole Woman's Health v. Jackson*, 142 S. Ct.

522 (2021), which eliminates any possibility of Article III standing with respect to the claims involving article 4512.2 and section 3 of SB 8 8. *See id.* at 537 ("Mr. Dickson argues that the petitioners lack standing to sue him because he possesses no intention to file an S. B. 8 suit against them. Mr. Dickson has supplied sworn declarations so attesting. The petitioners do not contest this testimony or ask us to disregard it. Accordingly, on the record before us the petitioners cannot establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.' No Member of the Court disagrees with this resolution of the claims against Mr. Dickson." (citations omitted)).

The only remaining claims involve the fee-shifting provisions in section 4 of SB 8. But the plaintiffs lack standing to pursue these claims because they are not suffering "injury in fact" traceable to the defendants' allegedly unlawful conduct. None of the defendants can sue the plaintiffs under section 4 because they have not attained "prevailing party" status in any lawsuit that seeks to prevent the enforcement of an abortion statute. *See* Sharp Decl. ¶ 15; Weldon Decl. ¶ 17; Maxwell Decl. ¶ 17; Cain Decl. ¶ 15. And the plaintiffs do not allege that any of the defendants will acquire "prevailing party" status in this litigation, as any such prediction would amount to a confession that their claims should lose. Indeed, the complaint makes no allegations of *any* Article III injury traceable to the defendants, and is entirely bereft of factual allegations involving the defendants' role in "enforcing" this provision against the plaintiffs. That alone requires dismissal of the section 4 claims, because a complaint must "clearly . . . allege facts demonstrating" each element of Article III standing to survive a motion to dismiss. *Spokeo,* 136 S. Ct. at 1547 (citation and internal quotation marks omitted)).

The defendants currently have no intention of suing the plaintiffs under section 4 even if they prevail in this litigation, because they plan to seek recovery of attorneys' fees from this Court under 42 U.S.C. § 1988(b). *See* Sharp Decl. ¶ 13; Weldon Decl.

¶ 15; Maxwell Decl. ¶ 15; Cain Decl. ¶ 13. The defendants have not yet decided, however, whether they will sue the plaintiffs under section 4 if they are unsuccessful in recovering fees under 42 U.S.C. § 1988(b). *See* Sharp Decl. ¶ 14; Weldon Decl. ¶ 16; Maxwell Decl. ¶ 16; Cain Decl. ¶ 14.

The plaintiffs have no standing to sue the defendants under these circumstances. Any possibility that the defendants might someday sue them under section 4 is "conjectural" and "hypothetical"—and speculative injuries of that sort are insufficient to confer Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an injury in fact must be "actual or imminent, not conjectural or hypothetical" (citation and internal quotation marks omitted)); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Article III" because "[a] threatened injury must be 'certainly impending' to constitute injury in fact."); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct. The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citations and internal quotation marks omitted)); *Gee*, 941 F.3d at 164 ("Article III requires more than theoretical possibilities."). And the complaint has not even *alleged* the facts needed to establish Article III standing to sue the defendants over section 4, which is fatal to their claims. *See Spokeo,* 136 S. Ct. at 1547; *Whitmore*, 495 U.S. at 155.

### C.   The Plaintiffs Lack Article III Standing To Request Relief That Would Protect Non-Parties To This Lawsuit

The plaintiffs seek to prevent the defendants from suing or prosecuting *anyone* under Senate Bill 8 or article 4512.2—even if the person or entity is not a party to this case. But the plaintiffs have no standing to seek relief that prevents the defendants

from suing or prosecuting non-parties to this litigation, absent allegations and evidence that the enforcement of Senate Bill 8 or article 4512.2 against those non-parties will inflict "injury" on the named plaintiffs. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *United States v. National Treasury Employees Union,* 513 U.S. 454, 477–78 (1995) (limiting relief to the parties before the Court and noting "we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants"); *In re Abbott*, 954 F.3d 772, 786 n.19 (5th Cir. 2020), *vacated on other grounds by Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021) ("[T]he district court purported to enjoin GA-09 as to *all* abortion providers in Texas. But Respondents are only a subset of Texas abortion providers and did not sue as class representatives. The district court lacked authority to enjoin enforcement of GA-09 as to anyone other than the named plaintiffs. The district court should be mindful of this limitation on federal jurisdiction at the preliminary injunction stage." (citation omitted)).[7]

---

7. *See also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("[T]he question at issue [is] whether a court may grant relief to non-parties. The right answer is no."); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983) ("[An] injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs."); Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 854 (1991) ("[T]he binding effect of the federal judgment extends no further than the parties to the lawsuit. Against nonparties, the state remains free to lodge criminal prosecutions."); Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657, 663 (2004) ("All injunctive relief, of course, including preliminary injunctions, binds only the defendants before the court, and applies only to protect the specific plaintiffs who have brought the suit.").

The plaintiffs have not asked this Court to certify them as class representatives; they have sued only as individual litigants. Yet the plaintiffs somehow think that the Court can treat this case as a de facto class action and allow them to seek relief that protects *every* individual or entity that might conceivably be sued under Senate Bill 8 or prosecuted under article 4512.2—regardless of whether those individuals or entities are plaintiffs to this lawsuit. But the judicial power extends only to resolving cases or controversies between parties, and the Court's relief may extend only to the named litigants, or to classes that have been certified consistent with the requirements of Rule 23. The only time that a court may issue relief that extends beyond the named litigants or a certified class is when such a remedy is needed to ensure that the prevailing parties obtain the relief to which they are entitled. *See Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 273–74 (5th Cir. 1984). But that allowance is not applicable here. The only relief to which the plaintiffs might be entitled is a declaration or an injunction that shields *them* from lawsuits or prosecution, and that shields *them* from attorney-fee-collection lawsuits brought under section 4. The plaintiffs have not alleged that they will suffer Article III injury from lawsuits or prosecutions brought against nonparties to this litigation, and they have no standing to assert the rights or interests of non-parties in the absence of a certified class. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."). So the Court must, at the very least, dismiss the plaintiffs' claims to the extent that they seek to prevent the enforcement of Senate Bill 8 or article 4512.2 against non-parties to this lawsuit.

## II.   The Claims Asserted Against Representative Cain Are Improperly Joined With The Claims Asserted Against Ms. Sharp, Ms. Weldon, And Ms. Maxwell

Rule 20 allows claims against different defendants to joined in a single action if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Neither of these requirements is satisfied, even though each of them must be met for the defendants to be joined in this action.

The plaintiffs' claims against Representative Cain arise out of a letter that he mailed to Texas abortion funds on March 18, 2022, and his public statements that call for the criminal prosecution of Texas abortion funds under article 4512.2. *See* Complaint, ECF No. 1, at ¶¶ 7, 12, 21, 73–74. The claims against the remaining defendants arise out of their potential interest in pursuing private civil-enforcement lawsuits under Senate Bill 8. *See* Complaint, ECF No. 1, at ¶¶ 7, 12, 18–20, 70–72. These are not the "same" transactions or occurrences, and they are not the "same" series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2)(A).

The plaintiffs' stipulation clarifies that the claims asserted against Representative Cain involve only the constitutionality of article 4512.2, while the claims asserted against the remaining defendants involve only the constitutionality of Senate Bill 8. *See* Stipulation, ECF No. 35, ¶¶ 1–3. This eliminates the possibility of "any question of law or fact common to all defendants."

The Court should dismiss Representative Cain from this action under Rule 20(a)(2), or it should sever the claims against Representative Cain and move them into a new civil action with a separate case number.

## III.   The Case Should Be Dismissed For Improper Venue

Venue is improper because none of the defendants reside in the Western District of Texas. *See* Sharp Decl. ¶ 16; Weldon Decl. ¶ 18; Maxwell Decl. ¶ 18; Cain Decl.

¶ 16.[8] And none of the events giving rise to the plaintiffs' claims occurred in this district. *See* 28 U.S.C. § 1391(b)(2) (requiring "a substantial part of the events or omissions giving rise to the claim" to occur in the judicial district where suit is filed). The plaintiffs bear the burden of establishing venue, and they come nowhere close to doing so. *See Gutierrez v. Drill Cuttings Disposal Company, LLC*, 319 F. Supp. 3d 856, 861 (W.D. Tex. 2018) ("Once challenged, the burden of sustaining venue lies with the plaintiff.").

The plaintiffs are suing Ms. Sharp over a declaration that expresses interest in suing Texas abortion funds under SB 8, but Ms. Sharp executed that declaration in Henderson County, not in the Western District of Texas. *See* Sharp Decl. ¶ 17. The plaintiffs seize on the fact that Ms. Sharp's declaration was *filed* in a federal case in the Western District of Texas, but it was the *execution* of the declaration that gave rise to the plaintiffs' purported claims against Ms. Sharp—and the plaintiffs' claims against Ms. Sharp would be unaffected if Ms. Sharp had merely executed the declaration without ever filing it in *United States v. Texas*, No. 1:21-cv-00796-RP (W.D. Tex.).

The plaintiffs are suing Ms. Weldon and Ms. Maxwell in response to Rule 202 petitions that they filed in Jack and Denton counties, which are located in the Northern and Eastern Districts of Texas. The plaintiffs observe that the Lilith Fund is located in the Western District of Texas,[9] but section 1391(b)(2) asks where the relevant "events" or "omissions" that gave rise to the claim occurred—not where the affected parties are located. The "events" that gave rise to the claims against Ms. Weldon and

---

8. The Court may consider the defendants' declarations when deciding a motion to dismiss under Rule 12(b)(3). *See Ambraco, Inc. v. Bosclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) ("[U]nder both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." (citation and internal quotation marks omitted)).

9. *See* Complaint, ECF No. 1, at ¶ 12 ("Defendant Weldon has taken steps to enforce S.B. 8 against an abortion fund based in this district.").

Ms. Maxwell were the filing of the Rule 202 petitions, and each of those "events" occurred outside the Western District of Texas.

Finally, the plaintiffs are suing Representative Cain in response to the letters that he mailed on March 18, 2022, as well the accompanying press release and tweets described in paragraph 74 of the plaintiffs' complaint. All of the work that Representative Cain performed on those letters and related correspondence took place in Harris County, and not in the Western District of Texas, so there are no relevant "events" that took place inside the Western District. *See* Cain Decl. ¶ 17.

The plaintiffs try to establish venue by relying on matters that have no relevance under section 1391(b)(2). The plaintiffs note that SB 8 "was enacted in this district,"[10] but the plaintiffs are not challenging the *enactment* of SB 8; they are suing the defendants over their roles in *enforcing* SB 8 and article 4512.2. The enactment of SB 8 did not "give rise" to the plaintiffs' claims against the defendants. It is the defendants' own conduct — and *only* the defendants' conduct — that can "give rise" to the claims that are being asserted. None of that conduct occurred in the Western District of Texas, and the plaintiffs do not argue to the contrary. The plaintiffs also allege that some of the Stigma Relief Fund's donors and beneficiaries reside in the Western District of Texas,[11] but section 1391(b)(2) is concerned with the location of "events" and "omissions" that give rise to the plaintiffs' claims — not with the location of individuals who may be affected by the defendants' conduct. The plaintiffs do not describe *any* "events" or "omissions" that: (1) occurred in the Western District of Texas; and (2) "gave rise to" the claims that the plaintiffs are asserting against the defendants.

---

10. *See* Complaint, ECF No. 1, at ¶ 12.
11. *See id.*

IV.   **The Plaintiffs Fail To State A Claim On Which Relief May Be Granted**

If the Court refuses to dismiss for lack of subject-matter jurisdiction or improper venue, then it should dismiss every one of the plaintiffs' claims for failing to state a claim on which relief may be granted.

A.   **The Plaintiffs Lack Third-Party Standing To Assert The Constitutional Rights Of Abortion Patients**

Some (but not all) of the plaintiffs' claims rely on the substantive-due-process right to abortion from *Roe v. Wade*, 410 U.S. 113 (1973). *See* Complaint, ECF No. 1, ¶ 77 ("By banning abortion at a pre-viability stage of pregnancy, Section 3 of S.B. 8 violates the Due Process Clause of the Fourteenth Amendment, which protects the right to previability abortion access."); *id.* at ¶ 84 ("The Criminal Abortion Ban cannot be lawfully enforced because, in *Roe v. Wade*, 410 U.S. 113 (1973), the U.S. Supreme Court held that it was unconstitutional."). But the plaintiffs do not have third-party standing to assert the constitutional rights of abortion patients. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (citation omitted)). The Supreme Court has allowed abortion doctors and abortion providers to assert the third-party rights of abortion patients, but no court has ever held that an abortion fund (or a donor to such a fund) has the necessary "close relation" needed to establish third-party standing. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (plurality opinion) (allowing *physicians* to assert third-party rights of their patients seeking abortions on account of the "patent" "closeness of the relationship"); *June Medical Services LLC v. Russo*, 140 S. Ct. 2103, 2118 (2020) (plurality opinion) ("We have long permitted abortion *providers* to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." (emphasis added)).

More importantly, a plaintiff that seeks to assert the constitutional rights of others must plead facts in its complaint that show how it satisfies the two-part test for third-party standing. *See Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant *clearly to allege facts demonstrating* that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (emphasis added)); *see also Kowalski*, 543 U.S. at 130 ("First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." (citations omitted)). The plaintiffs ignore this pleading requirement and act as though they can assert third-party rights simply because they are challenging the constitutionality of abortion restrictions.

The Court should dismiss the plaintiffs' substantive-due-process claims for lack of third-party standing.

> **B.**    **The Plaintiffs Lack A Cause Of Action To Assert The Substantive-Due-Process Rights Of Abortion Patients Because Neither 42 U.S.C. § 1983 Nor The Declaratory Judgment Act Permits Plaintiffs To Assert A Third Party's Rights**

The plaintiffs' substantive-due-process claims must be dismissed for an additional reason: The plaintiffs have no cause of action that allows them to assert the third-party rights of abortion patients. Their complaint asserts only two causes of action: 42 U.S.C. § 1983 and the Declaratory Judgment Act. *See* Complaint, ECF No. 1, at 1 ("They bring this lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202"). Neither of these causes of action allows plaintiffs to assert the rights of non-litigant third parties.

> **1.**    **The Cause Of Action Established In 42 U.S.C. § 1983 Does Not Authorize Plaintiffs To Assert The Rights Of Third Parties**

Section 1983 provides that:

> Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured* in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). Section 1983 permits lawsuits only by "*the* party injured," not "*a* party injured," which refers back to the statute's earlier description of the "citizen" or "person" who has suffered the deprivation of his rights. In the words of Professor Currie, section 1983

> plainly authorizes suit by anyone alleging that he has been deprived of rights under the Constitution or federal law, *and by no one else*. It thus incorporates, *but without exceptions*, the Court's "prudential" principle that the plaintiff may not assert the rights of third parties.

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45 (emphasis added). Only the rights-holder may sue under section 1983; the statute does not accommodate lawsuits brought by plaintiffs who seek to vindicate the constitutional rights of third parties.

This is hardly a novel principle. In *Rizzo v. Goode*, 423 U.S. 362 (1976), the Supreme Court emphasized that liability under section 1983 can attach only to conduct that violates the *plaintiff's* federally protected rights. *Id*. at 370–71 ("The plain words of [section 1983] impose liability whether in the form of payment of redressive damages or being placed under an injunction *only for* conduct which 'subjects, or causes to be subjected' *the complainant* to a deprivation of a right secured by the Constitution and laws." (emphasis added)). The Fifth Circuit and other federal courts of appeals have likewise recognized that section 1983 makes no allowance for lawsuits that seek to vindicate a third party's constitutional rights. *See, e.g.*, *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (holding that plaintiffs who invoke section 1983 are "required to prove some violation of their *personal* rights." (emphasis added)); *see also id*. (citing with approval rulings from other federal courts that prohibit third-party

litigation under section 1983); *Shaw v. Garrison*, 545 F.2d 980, 983 n.4 (5th Cir. 1977) *rev'd on other grounds sub nom. Robertson v. Wegmann*, 436 U.S. 584 (1978) (allowing a section 1983 lawsuit to proceed only after concluding that it was "not an attempt to sue under the civil rights statutes for deprivation of another's constitutional rights" and noting that "[s]uch suits are impermissible."); *Bates v. Sponberg*, 547 F.2d 325, 331 (6th Cir. 1976) ("42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated."); *Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) ("Garrett may not base his Section 1983 action on a violation of the rights of third parties."); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (it is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else").

The cause of action created by 42 U.S.C. § 1983 extends only to litigants who assert their *own* rights—and not the rights of third parties. The plaintiffs cannot use section 1983 to assert the constitutional rights of women seeking abortions.

### 2. The Cause Of Action Established In The Declaratory Judgment Act Does Not Authorize Plaintiffs To Assert The Rights Of Third Parties

The plaintiffs' reliance on the Declaratory Judgment Act fares no better. The text of the statute provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations *of any interested party seeking such declaration.*

28 U.S.C. § 2201 (emphasis added). Like section 1983, the Declaratory Judgment Act establishes a cause of action that allows litigants to seek a declaration of their *own* rights and legal relations. By authorizing courts to declare the rights "of *any interested party seeking such declaration*," the Declaratory Judgment Act necessarily excludes actions brought to declare the rights of non-parties—or anyone other than the party

"seeking such declaration" under the Act. *See* Currie, *supra* at 45 ("The court is empowered to declare only the 'rights' of the 'party seeking such declaration,' and he must be 'interested'; these terms seem both to forbid litigation of third-party rights absolutely and to impose an additional and unfamiliar 'interest' requirement that goes beyond the constitutional minimum.").

The Court should dismiss the plaintiffs' substantive-due-process claims for lack of a cause of action.

### C.     Defendant Briscoe Cain Is Entitled To Legislative Immunity

The plaintiffs are suing Representative Cain over his legislative activities, including a letter that he mailed on his official letterhead and his promise to introduce legislation that will allow district attorneys from throughout the state to prosecute violations of article 4512.2. *See* Complaint, ECF No. 1, at ¶¶ 7, 12, 21, 73–74. Representative Cain enjoys an absolutely immunity from suits filed in response to these actions—regardless of whether the lawsuit is seeking damages or prospective relief. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)); *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 733 (1980) ("'[A] private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" (quoting *Eastland v. United States Servicemen's Fund, supra*, 421 U.S. 491, 503 (1975)). The Court should dismiss all claims against Representative Cain on the ground of legislative immunity.

**D.     The Section 1983 Claims Against Defendants Sharp, Weldon, And Maxwell Should Be Dismissed Because The Plaintiffs Have Failed To Allege That They Are Acting Under Color Of State Law**

The plaintiffs claim to be suing Ms. Sharp, Ms. Weldon, and Ms. Maxwell under 42 U.S.C. § 1983. *See* Complaint, ECF No. 1 at 1 ("They bring this lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202."). But section 1983 authorizes lawsuits only against individuals who act under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. A private citizen does not act under color of state law by filing (or threatening to file) a lawsuit under a state statute that authorizes his suit. The law of the Fifth Circuit is abundantly clear on this point. *See, e.g.*, *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 555 (5th Cir. 1988) ("The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order."); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir. 1981) ("[N]o state action is involved when the state merely opens its tribunals to private litigants."); *see also Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (Friendly, J.) ("[W]e know of no authority that one private person, by asking a state court to make an award against another which is claimed to be unconstitutional, is violating 42 U.S.C. § 1983.").[12]

---

12. *See also Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967) ("[M]erely by holding its courts open to litigation of complaints, regardless of how baseless they eventually prove to be, Pennsylvania does not clothe persons who use its judicial processes with the authority of the state."); *Gritchen v. Collier*, 254 F.3d 807, 813–14 (9th Cir. 2001) (police officer who threatens to bring defamation suit is not acting "under color of state law" under 42 U.S.C. § 1983, even though a state statute gave him the right to sue).

The only circumstance in which a private litigant may be sued for acting "under color of" state law is when he conspires or coordinates his efforts with state officials, or when there is "corruption of judicial power by the private litigant." *See, e.g.*, *See, e.g.*, *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ("If a state merely allows private litigants to use its courts, there is no state action within the meaning of § 1983 unless 'there is corruption of judicial power by the private litigant.'" (quoting *Earnest v. Lowentritt,* 690 F.2d 1198, 1200 (5th Cir. 1982)). In *Howard Gault*, the Fifth Circuit carefully explained the circumstances in which a private litigant might be held liable under 42 U.S.C. § 1983 for acting "under color of" state law:

> The growers are purely private individuals. Viewed in a vacuum, their action in filing suit and seeking a temporary restraining order cannot be viewed as state action. The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order. The action taken by the growers cannot be viewed in a vacuum, however. It arose out of deep-seated community hostility toward the strike, the strike organizers and the strikers themselves. The attorneys hired to represent the growers were also criminal district attorneys. Throughout the strike, while representing the growers in an ostensibly private action, the attorneys advised the sheriff of the provisions of the TRO and instructed them in means of enforcing compliance. The attorneys sought advice from the Attorney General of the State of Texas on the constitutionality of the Mass Picketing Statutes. Under Texas law, this advice could only be solicited by public officials in their public capacity. Throughout the litigation, deputy sheriffs and investigators with the sheriff's office reported the results of their observations on the picket lines to the growers' attorneys, who were at once public officials charged with the duty of enforcing state criminal laws, including civil injunctions, and private attorneys concerned with adequate representation of their private clients. The interlocking activities of the State, through the criminal district attorneys, the Attorney General and the sheriff of Deaf Smith County, and the growers constituted a joint effort which justified the lower court's characterization of the growers as state actors. The activity here, while not compelled by the state, was so "significant[ly] encourage[ed, both] overt[ly] and covert[ly], that the choice must in law be deemed to be that of the state." We once again emphasize that the growers cannot be considered state actors merely because they invoked a state statute. It

was the heavy participation of state and state officials that brings this under color of state law."

*Howard Gault*, 848 F.2d at 555; *see also id*. ("The growers' action here extends beyond merely resorting to the courts to obtain a TRO. The growers acted in concert with their attorneys who were public officials and who were engaging in official duties throughout the strike.").

The complaint makes no allegation that Ms. Sharp, Ms. Weldon, or Ms. Maxwell is conspiring or coordinating with public officials; indeed, the complaint does not even allege that any of them are acting "under color of" state law. So the plaintiffs have failed to state a claim that Ms. Sharp, Ms. Weldon, or Ms. Maxwell is violating 42 U.S.C. § 1983. For good measure, Ms. Sharp, Ms. Weldon, and Ms. Maxwell have submitted sworn declarations stating that any private civil-enforcement lawsuits that they might file will be done on their own initiative and without consultation with any government officials:

> I have not conspired or consulted with any judge or any government official with regard to any possible lawsuit that I might bring under Senate Bill 8, and I have no intention of doing so. If I ever decide to bring a civil-enforcement lawsuit under Senate Bill 8, it will be entirely of my own accord, and it will be brought in consultation with no one except my attorneys, who are private citizens and not government officials. Under no circumstance will I coordinate my efforts with any judge or any government official, and I will not allow my attorneys to do so.

Sharp Decl. ¶ 18; *see also* Weldon Decl. ¶ 20 (same); Maxwell Decl. ¶ 20 (same).[13] So the section 1983 claims against Ms. Sharp, Ms. Weldon, and Ms. Maxwell should be dismissed.[14]

> **E.   The First Amendment And Due Process Claims Against Defendants Sharp, Weldon, And Maxwell Should Be Dismissed Because Private Citizens Cannot Violate The Constitution**

The First Amendment and the Due Process Clause restrain only the behavior of government officials. *See Civil Rights Cases*, 109 U.S. 3 (1883); *United States v. Cruikshank*, 92 U.S. 542, 554 (1875) ("The fourteenth amendment prohibits a State from depriving any person of life, liberty, or property, without due process of law; but this adds nothing to the rights of one citizen as against another."). It is impossible for a private citizen to violate the First Amendment or the Due Process Clause. Yet the plaintiffs purport to be asserting "First Amendment" and "Due Process" claims against Ms. Sharp, Ms. Weldon, and Ms. Maxwell—even though these individuals are incapable of violating those constitutional provisions. *See* Complaint, ECF No. 1, ¶¶ 76–81. The plaintiffs complain that Senate Bill 8 "violates" the First Amendment and the Due Process Clause. *See id.* at ¶¶ 77–78; *id.* at 80–81. But litigants do not sue statutes, they sue defendants—and the plaintiffs must allege that the *defendants* are violating the First Amendment or the Due Process Clause to state a claim on

---

13. It is not necessary to rely on these declarations, as the complaint fails even to allege that Ms. Sharp, Ms. Weldon, or Ms. Maxwell acted or is acting "under color of" state law. But if the Court relies on these declarations, then it should allow the plaintiffs a "reasonable opportunity" to respond to this evidence and treat the filing as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

14. Once the section 1983 claims against Ms. Sharp, Ms. Weldon, and Ms. Maxwell are dismissed, then the declaratory-judgment claims against them must be dismissed for lack of federal-question jurisdiction. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 16 (1983) ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." (citation omitted)); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950).

which relief may be granted. *See* Nicholas Quinn Rosenkranz, *The Subjects of the Constitution*, 62 Stan. L. Rev. 1209, 1221 (2010) ("Statutes do not violate the Constitution any more than guns commit murder. Judicial review is not the review of statutes at large; judicial review is constitutional review of governmental action. Government actors violate the Constitution." (footnote omitted)). All of the First Amendment and Due Process claims against Ms. Sharp, Ms. Weldon, and Ms. Maxwell should be dismissed.

### F.    Senate Bill 8 Does Not Violate *Roe* Or *Casey* Because It Explicitly Incorporates The Undue-Burden Standard And Prevents Courts From Imposing Liability On Constitutionally Protected Conduct

The plaintiffs claim that Senate Bill 8 "violates" the right to abortion established in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 874 (1992), but the statute explicitly shields anyone from liability in situations where judicial relief would impose an "undue burden" on women seeking abortions:

> A defendant in an action brought under Section 171.208 may assert an affirmative defense to liability under this section if:
>
> (1) the defendant has standing to assert the third-party rights of a woman or group of women seeking an abortion in accordance with Subsection (a); and
>
> (2)  the defendant demonstrates that the relief sought by the claimant will impose an undue burden on that woman or that group of women seeking an abortion.

Tex. Health & Safety Code § 171.209(b). So the statute incorporates the Supreme Court's very own test for determining the scope of the supposed right to abortion,[15] and it ensures that no one will be held liable for providing constitutionally protected

---

15. *See Casey*, 505 U.S. 833, 874 (1992) (plurality opinion) ("Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause.").

abortion services. Anyone sued under SB 8 may assert *Roe* or *Casey* (or any other constitutional claim) as a defense to liability, and no liability may be imposed in response to constitutionally protected conduct. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530 n.1 (2021) ("[W]hatever a state statute may or may not say, applicable federal constitutional defenses always stand fully available when properly asserted."). The problem for the plaintiffs is that neither *Roe* nor *Casey* recognized a constitutional right to pay for other people's abortions, so neither of those decisions provides a defense if any of the plaintiffs chooses to pay for post-heartbeat abortions in violation of SB 8. And no "undue burden" will be imposed if any of the plaintiffs are sued or held liable for paying for other people's post-heartbeat abortions, because women seeking abortions have no constitutional right to have other people pay for it. *See Harris v. McRae*, 448 U.S. 297, 325 (1980).

### G.    There Is No Constitutional Right To Pay For Another Person's Abortion Or Contribute Money To An Abortion Fund

The Supreme Court has never recognized a constitutional right to pay for another person's abortion, and the notion that the "freedom of speech" protects the activities of abortion funds is untenable. Paying for an abortion is conduct, not speech. And contributing money to help others terminate the life of an unborn child is no more "speech" than hiring a hitman or contributing money to organizations that murder innocent civilians. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 30 (2010). The plaintiffs claim that they are "expressing" their abortion-supportive beliefs by contributing money to abortion funds in violation of article 4512.2, but every person who violates the law is "expressing" a belief of some sort, and that does not bring their conduct within the purview of the First Amendment. Abortion is an act of violence, and violent acts do not implicate the First Amendment even when they "express" a viewpoint (such as hatred for the victim).

The plaintiffs are of course free to express their beliefs that abortion should remain legal on demand, and they may contribute money and join with others in using speech, advocacy, lobbying, and political protest to change people's opinions on abortion. But they may not pay for other people's abortions in violation of article 4512.2, and the First Amendment confers no protections on the plaintiffs' desire to subsidize the abortion procedure itself.

Finally, the plaintiffs' First Amendment claim is meritless because SB 8 specifically prohibits courts from imposing liability on any speech or conduct protected by the First Amendment:

> This section may not be construed to impose liability on any speech or conduct protected by the First Amendment of the United States Constitution, as made applicable to the states through the United States Supreme Court's interpretation of the Fourteenth Amendment of the United States Constitution, or by Section 8, Article I, Texas Constitution.

Tex. Health & Safety Code § 171.208(g). A statute that explicitly exempts First Amendment activities from liability or punishment cannot "violate" the First Amendment. A statute of this sort comports with the First Amendment by definition.

### H. Requiring The Plaintiffs To Pay The Defendants' Costs And Attorneys' Fees If The Defendants Prevail In This Litigation Does Not Violate The First Amendment Or 42 U.S.C. § 1988

All sorts of statutes require losing plaintiffs to pay the costs and attorneys' fees of prevailing defendants. *See, e.g.*, Tex. R. Civ. P. 91a7 (allowing courts to order losing plaintiffs to pay the costs and attorneys' fees when a claim is dismissed under the state-law equivalent of Rule 12(b)(6)); Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (mandatory one-way shifting under Texas's anti-SLAPP law). No court has ever held that fee-shifting of this sort violates the First Amendment, even when the fee-shifting provision is limited to certain categories of lawsuits. Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (anti-SLAPP); 15 U.S.C. § 77z-1(c)(3) (presumption in favor of

awarding attorneys' fees and costs in federal securities litigation). None of this abridges or even implicates the freedom of speech. The plaintiffs are free to speak or litigate on any issue they wish, but if they file a losing lawsuit that seeks to block the enforcement of an abortion statute then the costs of defending that lawsuit fall on them rather than the defendants who were wrongfully sued. Nor are the plaintiffs victims of "viewpoint discrimination," as SB 8's fee-shifting regime applies regardless of the "viewpoint" that litigants assert when challenging the constitutionality of an abortion restriction. And there is nothing unconstitutional about selective fee-shifting regimes that favor or disfavor certain classes of litigants.

The plaintiffs' preemption claim is also meritless. The text of 42 U.S.C. § 1988 allows "prevailing *parties*" — not "prevailing plaintiffs" — to recover costs and attorneys' fees in section 1983 litigation; it is a loser-pays rule rather than a one-way fee-shifting regime. SB 8's fee-shifting provision is entirely consistent with the unambiguous text of this federal statute. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit."). The plaintiffs want to pretend that section 1988 says something other than what it actually says, but preemption arguments must be grounded in the actual rather than imagined language of a federal statute,[16] and the plaintiffs cannot overcome the presumption against preemption by appealing to non-textual considerations such as congressional "purpose" or judicial precedents that ignore the relevant statutory language. *See Maryland v. Louisiana,* 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption

---

16. *See Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) ("In all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress."); *see also id*. at 807–08 (Thomas, J., joined by Gorsuch, J., concurring).

that Congress did not intend to displace state law."). Finally, nothing in section 1988 prevents Texas from requiring the plaintiffs to pay costs and attorneys' fees for unsuccessful claims brought under the Declaratory Judgment Act, and each of the plaintiffs' claims is being asserted under *both* section 1983 and 28 U.S.C. §§ 2201–02. The plaintiffs have no preemption argument that could shield them (or others) from fee-shifting over claims that invoke the Declaratory Judgment Act.

## I.        The Plaintiffs' Procedural Due Process Claim Is Meritless

The plaintiffs are not complaining about any *procedures* that might be used in SB 8 civil-enforcement suits. Their grievances concern only the substance of SB 8, which imposes significant penalties on lawbreakers and allows plaintiffs to litigate claims in their home counties, while restricting the availability of defenses such a non-mutual issue or claim preclusion. Yet everyone sued under SB 8 will receive notice and an opportunity to be heard before liability is imposed, so the plaintiffs have failed to allege a *procedural* due process problem with the statute. Nothing in the due-process clause gives defendants a right to litigate in their home counties rather than the plaintiff's home county. And any complaints about the penalties and limitations on available defenses are substantive complaints that must be grounded in a substantive constitutional provision.

## CONCLUSION

The motion to dismiss for lack of subject-matter jurisdiction should be granted. In the alternative, the Court should sever or dismiss the claims brought against Representative Cain for improper joinder, and dismiss the claims against all defendants for improper venue. If the Court refuses to dismiss the case on jurisdictional or venue grounds, then it should dismiss each of the plaintiffs' claims for failure to state a claim on which relief may be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jᴏɴᴀᴛʜᴀɴ F. Mɪᴛᴄʜᴇʟʟ
Texas Bar No. 496344
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 31, 2022                      *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2022, I served this document through CM/ECF upon:

STEPHANIE TOTI
JUANLUIS RODRIGUEZ
SNEHA SHAH
Lawyering Project
41 Schermerhorn Street, No. 1056
Brooklyn, New York 11201
(646) 490-1083 (phone)
(646) 480-8622 (fax)
stoti@lawyeringproject.org
prodriguez@lawyeringproject.org
sshah@lawyeringproject.org

RUPALI SHARMA
Lawyering Project
113 Bonnybriar Road
South Portland, Maine 04106
(908) 930-6645 (phone)
(646) 480-8622 (fax)
rsharma@lawyeringproject.org

MELISSA C. SHUBE
Lawyering Project
712 H Street NE, Suite 1616
Washington, D.C. 20002
(646) 480-8942 (phone)
(646) 480-8622 (fax)
mshube@lawyeringproject.org

TANYA PELLEGRINI
Lawyering Project
584 Castro Street, No. 2062
San Francisco, California 94114
(646) 480-8973 (phone)
(646) 480-8622 (fax)
tpellegrini@lawyeringproject.org

DORIAN VANDENBERG-RODES
Shellist Lazarz Slobin LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 (phone)
(713) 621-0993 (fax)
drodes@eeoc.net


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Defendants*