**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WENDY DAVIS; SEAN MEHL; MARVA SADLER; and STIGMA RELIEF FUND, | ) ) ) | |
| | ) | CIVIL ACTION |
| *Plaintiffs*, | ) | |
| | ) | CASE NO. 1:22-CV-00373-RP |
| v. | ) | |
| | ) | |
| MISTIE SHARP; SADIE WELDON; and ASHLEY MAXWELL, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 1

I.      Plaintiffs ....................................................................................................................... 1

II.     S.B. 8's Framework ..................................................................................................... 2

        A      S.B. 8 Bans Abortion Beginning at Approximately Six Weeks LMP. .................... 3

        B.     Section 3 of S.B. 8 Subjects Anyone Who Provides, Aids, or Abets a
               Prohibited Abortion to Unlimited Civil Liability Without Adequate
               Procedural Safeguards. ........................................................................................ 3

        C.     Section 4 of S.B. 8 Makes Litigants and Attorneys Who Challenge
               Abortion Restrictions Broadly Liable for Their Adversaries' Costs and
               Attorney's Fees. .................................................................................................. 5

III.    Impact of Defendants' Credible Threats to Enforce S.B. 8 Against Texas Abortion
        Funds and Their Associates ........................................................................................ 6

ARGUMENT ........................................................................................................................... 7

I.      Summary Judgment and Declaratory Judgment Standards ........................................ 7

II.     Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 3 of
        S.B. 8 ........................................................................................................................... 9

        A.     S.B. 8's Enforcement Scheme Violates Plaintiffs' Right to Procedural Due
               Process. ............................................................................................................... 9

               1.     S.B. 8 's Enforcement Scheme Fails the Balancing Test Prescribed
                     by *Mathews v. Eldridge*. ........................................................................ 9

               2.     S.B. 8's Enforcement Scheme Threatens to Impose Grossly Excessive
                     Punishments on Plaintiffs. ...................................................................... 13

        B.     S.B. 8's Enforcement Scheme Violates Plaintiffs' Rights Under the Equal
               Protection Clause. ............................................................................................. 14

        C.     Section 3 of S.B. 8 Is Overbroad in Violation of the First Amendment. ............... 18

III.    Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 4 of
        S.B. 8 ......................................................................................................................... 21

        A.     S.B. 8's Fee-Shifting Scheme Violates Plaintiffs' Freedom of Speech. ............... 21

        B.     S.B.8's Fee-Shifting Scheme Violates Plaintiffs' Rights Under the Equal
               Protection Clause. ............................................................................................. 23

        C.     S.B. 8's Fee-Shifting Scheme is Preempted by Section 1988. ............................. 24

CONCLUSION ....................................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227 (1937) ................................................................................................ 8

*Am. Family Life Assurance Co. of Columbus v. Biles,*
   714 F.3d 887 (5th Cir. 2013) .................................................................................. 8

*Ams. For Prosperity Found. v. Bonta,*
   141 S. Ct. 2373 (2021) ...................................................................................... 19, 20

*BMW of N. Am., Inc. v. Gore,*
   517 U.S. 559 (1996) .......................................................................................... 13, 14

*Boy Scouts of Am. v. Dale,*
   530 U.S. 640 (2000) .............................................................................................. 19

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.,*
   532 U.S. 598 (2001) .............................................................................................. 25

*Butts v. Aultman,*
   953 F.3d 353 (5th Cir. 2020) ................................................................................ 14

*Christiansburg Garment Co. v. EEOC,*
   434 U.S. 412 (1978) .............................................................................................. 26

*City of Cleburne v. Cleburne Living Ctr.,*
   473 U.S. 432 (1985) .................................................................................... 14, 15, 17

*Cuellar v. Tex. Emp't Comm'n,*
   825 F.2d 930 (5th Cir. 1987) ................................................................................ 10

*Dep't of Agriculture v. Moreno,*
   413 U.S. 528 (1973) ........................................................................................ 15, 24

*Felder v. Casey,*
   487 U.S. 131 (1988) .............................................................................................. 26

*Fox v. Vice,*
   563 U.S. 826 (2011) .............................................................................................. 25

*Freedman v. Maryland,*
   380 U.S. 51 (1965) ................................................................................................ 20

*Goldberg v. Kelly,*
   397 U.S. 254 (1970) .............................................................................................. 11

*Grisham v. City of Fort Worth,*
   837 F.3d 564 (5th Cir. 2016) ................................................................................ 25

*Haywood v. Drown,*
   556 U.S. 729 (2009) .............................................................................................. 26

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ...................................................................................... 25

*Hubbard v. SoBreck, LLC,*
    554 F.3d 742 (9th Cir. 2009) ...................................................................... 27

*Hughes v. Rowe,*
    449 U.S. 5 (1980) .......................................................................................... 25

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ................................................................................. 22

*In re Primus,*
    436 U.S. 412 (1978) ................................................................... 21, 23, 24

*KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n,*
    478 S.W.3d 111 (Tex. App. 2015) ........................................................... 16

*Leathers v. Medlock,*
    499 U.S. 439 (1991) ..................................................................................... 22

*Lefemine v. Wideman,*
    568 U.S. 1 (2012) .......................................................................................... 25

*Legal Servs. Corp. v. Velazquez,*
    531 U.S. 533 (2001) ................................................................... 21, 23, 24

*Logan v. Zimmerman Brush Co.,*
    455 U.S. 422 (1982) ..................................................................................... 10

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ..................................................................... 9, 10, 12

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.,*
    25 F.4th 360 (5th Cir. 2022) ........................................................................ 8

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ........................................................................................ 9

*Mendez v. Poitevent,*
    823 F.3d 326 (5th Cir. 2016) ........................................................................ 8

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990) ........................................................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ..................................................................................... 10

*NAACP v. Button,*
    371 U.S. 415 (1963) ............................................................................... 20, 21

*Nelson v. Colorado,*
    137 S. Ct. 1249 (2017) ................................................................................. 12

*New York Times v. Sullivan,*
    376 U.S. 254 (1964) ..................................................................................... 20

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
 783 F.3d 527 (5th Cir. 2015) ........................................................................ 8

*Palmore v. Sidoti*,
 466 U.S. 429 (1984) ..................................................................................... 15

*PLIVA, Inc. v. Mensing*,
 564 U.S. 604 (2011) ..................................................................................... 24

*Police Dep't of City of Chi. v. Mosley*,
 408 U.S. 92 (1972) ................................................................................ 17, 23

*R.A.V. v. City of St. Paul*,
 505 U.S. 377 (1992) ..................................................................................... 22

*Roberts v. U.S. Jaycees*,
 468 U.S. 609 (1984) ..................................................................................... 19

*Romaguera v. Gegenheimer*,
 162 F.3d 893 (5th Cir. 1998) ....................................................................... 26

*Romer v. Evans*,
 517 U.S. 620 (1996) ......................................................................... 15, 17, 24

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
 515 U.S. 819 (1995) ..................................................................................... 22

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
 502 U.S. 105 (1991) ..................................................................................... 22

*State v. Golden's Concrete Co.*,
 962 P.2d 919 (Colo. 1998) ........................................................................... 27

*Steffel v. Thompson*,
 415 U.S. 452 (1974) ....................................................................................... 9

*United Indus., Inc. v. Simon-Hartley, Ltd.*,
 91 F.3d 762 (5th Cir. 1996) ......................................................................... 26

*United States v. Locke*,
 529 U.S. 89 (2000) ................................................................................. 25, 26

*United States v. Zadeh*,
 820 F.3d 746 (5th Cir. 2016) ....................................................................... 25

*Wal-Mart Stores, Inc. v. Forte*,
 497 S.W.3d 460 (Tex. 2016) ........................................................................ 16

*Walsh v. Hodge*,
 975 F.3d 475 (5th Cir. 2020) .......................................................... 10, 11, 12

*Whole Woman's Health v. Jackson*,
 642 S.W.3d 569 (Tex. Mar. 11, 2022) ........................................................... 3

*Zobel v. Williams*,
 457 U.S. 55 (1982) ....................................................................................... 18

Statutes

28 U.S.C. § 2201(a) ................................................................................................ 8

42 U.S.C. § 1988 ............................................................................................ *passim*

42 U.S.C. § 1988(b) ..................................................................................... 23, 24

Tex. Civ. Prac. & Rem. Code § 10.001 ................................................................ 16

Tex. Civ. Prac. & Rem. Code § 15.002(a) ...................................................... 12, 16

Tex. Civ. Prac. & Rem. Code § 15.002(b) ...................................................... 12, 16

Tex. Civ. Prac. & Rem. Code § 30.022 ......................................................... *passim*

Tex. Health & Safety Code § 171.002(3) .............................................................. 3

Tex. Health & Safety Code § 171.203(b) .............................................................. 3

Tex. Health & Safety Code § 171.204(a) .............................................................. 3

Tex. Health & Safety Code § 171.205(a) .............................................................. 3

Tex. Health & Safety Code § 171.207(a) .............................................................. 3

Tex. Health & Safety Code § 171.208 ........................................................... *passim*

Tex. Health & Safety Code § 171.209 ................................................................. 11

Tex. Health & Safety Code § 171.210 ............................................... 4, 11, 12, 16

Rules

Fed. R. Civ. P. 56(a) ............................................................................................. 7

Fed. R. Civ. P. 56(b) ............................................................................................. 8

Fed. R. Civ. P. 56(d)(2)......................................................................................... 8

## INTRODUCTION

Plaintiffs seek to associate with like-minded organizations and individuals to: (1) convey messages of support and affirmation to people seeking abortion care, including by helping Texans obtain abortions in states where abortion is legal, and (2) advocate for abortion rights in courts and policy arenas. Decl. of Wendy R. Davis ("Davis Decl.") ¶¶ 9–11; Decl. of Sean Mehl ("Mehl Decl.") ¶¶ 8–10; Decl. of Marva Sadler ("Sadler Decl.") ¶ 7. Defendants' credible threats of civil lawsuits under Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8") against Texas abortion funds and their donors, employees, and volunteers have chilled these constitutionally protected activities. *See* Davis Decl. ¶ 12; Mehl Decl. ¶¶ 16–17; Sadler Decl. ¶¶ 10–11.

Accordingly, Plaintiffs seek a declaration from this Court that S.B. 8 is unconstitutional, preempted by federal law, and therefore unenforceable. First Am. Compl. (ECF No. 62) at 17. The facts of this case are not in dispute, as Defendants' threats against Texas abortion funds and their associates under S.B. 8 are well-documented. Mehl Decl. ¶¶ 11–15. For these reasons, Plaintiffs respectfully move the Court pursuant to Federal Rule of Civil Procedure 56(a) to enter summary judgment on all their claims.

## STATEMENT OF FACTS

### I.    Plaintiffs

Abortion funds are charitable organizations that provide informational, financial, and/or practical assistance to abortion patients. Sadler Decl. ¶ 3. Plaintiff Stigma Relief Fund is an abortion fund that serves people, including Texas residents, seeking abortion care in states where abortion remains legal. *Id.* ¶ 4. Stigma Relief Fund provides its services in part to send a message to people seeking an abortion that they are not alone, their community supports them, and they are entitled to end a pregnancy with dignity. *Id.* ¶ 7. Stigma Relief Fund's clients include people who reside in the Western District of Texas. *Id.* ¶ 4. Stigma Relief Fund also engages in advocacy to

1

promote abortion access. *Id*. ¶ 6. Through this advocacy, it seeks to convey to policymakers and the general public that everyone deserves safe abortion care regardless of their circumstances. *Id.* ¶ 7.

Plaintiffs Marva Sadler and Sean Mehl serve on the Board of Directors of the Stigma Relief Fund. Mehl Decl. ¶ 4; Sadler Decl. ¶ 1. In the past, both have donated money to Stigma Relief Fund and other Texas abortion funds, including funds with clients who reside in the Western District of Texas. Mehl Decl. ¶ 8; Sadler Decl. ¶¶ 1, 7. They would like to continue making such donations in the future. *See* Mehl Decl. ¶ 8; Sadler Decl. ¶ 10. Through their association with Stigma Relief Fund and other Texas abortion funds, Plaintiffs Sadler and Mehl seek to communicate to people seeking abortion care that they are not alone, their community supports them, and they are entitled to end their pregnancy with dignity. Mehl Decl. ¶ 9; Sadler Decl. ¶ 7. Additionally, Plaintiffs Sadler and Mehl work through Stigma Relief Fund to advocate for abortion rights and equitable abortion access to policymakers and the general public. Mehl Decl. ¶¶ 6, 10; Sadler Decl. ¶¶ 6–7.

Plaintiff Wendy Davis regularly donates money to the Lilith Fund for Reproductive Equity ("Lilith Fund"), which is based in the Western District of Texas, Mehl Decl. ¶ 13, and she works in coalition with that abortion fund and others to support abortion patients and advocate for abortion rights. Davis Decl. ¶ 11. One goal of her activism is to send a message to Texans seeking abortion care that they are not alone, are not doing anything wrong, and deserve access to safe abortion care regardless of their background or financial circumstances. *Id.* ¶ 10.

## II.    S.B. 8's Framework

S.B. 8 took effect on September 1, 2021. *See* S.B. 8 § 12. Its operative provisions are set forth in Sections 3 and 4, which include an abortion ban, private civil enforcement mechanism, and one-way fee-shifting scheme. *See id.* §§ 3-4. These Sections are described below.

### A.  S.B. 8 Bans Abortion Beginning at Approximately Six Weeks LMP.

S.B. 8 requires physicians to perform an ultrasound before providing an abortion, and it prohibits the abortion if "cardiac activity" is detected. *Id.* § 3 (codified at Tex. Health & Safety Code §§ 171.201(1), 171.203(b), 171.204(a)).[1] S.B. 8 defines "physician" as "an individual licensed to practice medicine in [Texas]." Tex. Health & Safety Code § 171.201(4). "Cardiac activity" is generally     detectible beginning at approximately six weeks of pregnancy, as measured from the first day of a patient's last menstrual period ("LMP").  First Am. Compl. (ECF No. 62) ¶ 27. The only exception to this prohibition is for a "medical emergency" that  entails "a life-threatening physical condition." Tex. Health & Safety Code §§  171.002(3), 171.205(a). Thus, S.B. 8 prohibits virtually all abortions after approximately six weeks LMP.

### B.  Section 3 of S.B. 8 Subjects Anyone Who Provides, Aids, or Abets a Prohibited Abortion to Unlimited Civil Liability Without Adequate Procedural Safeguards.

S.B. 8 expressly precludes government officers from enforcing the six-week ban, which has thus far insulated the statute from federal court review on the merits. *Id.* § 171.207(a); *see*, *e.g.*, *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 582 (Tex. Mar. 11, 2022) (holding that Texas law does not authorize State-licensing-official defendants to enforce S.B. 8); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 539 (2021) (holding that pre-enforcement challenge to S. B. 8 under the Federal Constitution could not proceed past the motion to dismiss stage against the remaining defendants). Instead, the statute creates a private, civil enforcement scheme that authorizes "[a]ny person, other than an officer or employee of a state or local governmental entity in this state" to "bring a civil action against any person" who violates S.B. 8. Tex. Health & Safety Code § 171.208(a). Three classes of people are subject to such actions: (1) any person who

---

[1] From here on, citations to codified provisions of S.B. 8 are to the relevant code only.

"performs or induces an abortion in violation of" the six-week ban; (2) any person who "knowingly engages in conduct that aids or abets the performance or inducement of" an abortion that violates the six-week ban; and (3) any person who "intends to" perform, induce, aid, or abet a prohibited abortion, regardless of whether they actually commit those acts. *Id*. § 171.208(a)(1)-(3). S.B. 8 does not define aiding or abetting other than to state that the term includes "paying for or reimbursing the costs of an abortion." *Id*. § 171.208(a)(2).

Where an S.B. 8 claimant prevails, "the court shall award":  (1) "injunctive relief sufficient to prevent the defendant from violating [the six-week abortion ban] or engaging in acts that aid or abet violations of [the six-week abortion ban]"; (2) "statutory damages in an amount of not less than $10,000 for each abortion" that the defendant provided, aided, or abetted; and (3) the claimant's "costs and attorney's fees." *Id.* § 171.208(b). S.B. 8 does not require the claimant to allege or prove any injury to obtain an award. *See id*. § 171.208.

The rules governing S.B. 8 enforcement proceedings diverge sharply from the rules that normally apply to Texas litigants in ways that make it extremely difficult for those sued to fairly defend themselves. For example, S.B. 8 authorizes statewide venue for enforcement actions, meaning that those subject to S.B. 8 lawsuits can be forced to defend themselves in multiple, simultaneous enforcement proceedings across the State. Tex. Health & Safety Code § 171.210(a)-(b).

Additionally, S.B. 8 eliminates defenses available to litigants in other actions necessary to ensure fundamental fairness. *See id*. § 171.208(e), (f-1). These defenses include the fact that the defendants relied on a court order authorizing their conduct that was in place at the time of the acts underlying the suit, but was later overruled. *Id*. § 171.208(e)(3).

Moreover, S.B. 8 authorizes one-way fee-shifting in favor of S.B. 8 claimants, providing that any claimant who prevails is entitled to recover their costs and attorney's fees. *Id.* § 171.208(b)(3). Conversely, S.B. 8 defendants cannot be awarded costs or attorney's fees even if they prevail. *Id.* § 171.208(i).

### C.  *Section 4 of S.B. 8 Makes Litigants and Attorneys Who Challenge Abortion Restrictions Broadly Liable for Their Adversaries' Costs and Attorney's Fees.*

Section 4 of S.B. 8 creates an unprecedented one-way fee-shifting scheme designed to deter legal challenges to *all Texas abortion restrictions* and to penalize anyone who brings such a challenge. Tex. Civ. Prac. & Rem. Code § 30.022. This scheme is distinct from the fee-shifting provision in Section 3 of the statute that applies only to S.B. 8 enforcement actions. *See* Tex. Health & Safety Code § 171.208(b)(3). Section 4's fee-shifting scheme applies to any person — including a party's attorney—who seeks declaratory or injunctive relief to prevent enforcement of laws "that regulate[] or restrict[] abortion," or laws that exclude those who "perform or promote" abortion from participating in public funding programs. Tex. Civ. Prac. & Rem. Code § 30.022(a).

Section 4's fee-shifting scheme lacks an exception for Section 1983 claims to vindicate federal constitutional rights, which are already subject to a comprehensive fee-shifting regime under 42 U.S.C. § 1988. *See id.* § 30.022. The fee-shifting scheme makes civil rights plaintiffs and their attorneys liable for their adversaries' attorney's fees unless they prevail on all of their claims. Tex. Civ. Prac. & Rem. Code. § 30.022(b). This is true even if the court enjoins the challenged abortion restriction in full after, for example, rejecting a claim pleaded in the alternative or dismissing a claim rendered moot by circumstance. *See id.* Further, the party seeking fees need not ask for them in the underlying case. *Id.* § 30.022(c)-(d)(1). They can file a new lawsuit against

the plaintiffs and/or their attorneys at any time within three years of the resolution of the plaintiffs' claims. *Id.* § 30.022(c). And they can choose to litigate their fee application in a new venue before a judge who did not preside over the underlying case. *Id.* § 30.022(c)-(d)(2). S.B. 8 prohibits judges adjudicating such fee applications from considering whether the court in the underlying case denied fees to the party defending the abortion restriction or even held Section 4 of the statute "invalid, unconstitutional, or preempted by federal law." *Id.* § 30.022(d)(2)-(3).

### III.  Impact of Defendants' Credible Threats to Enforce S.B. 8 Against Texas Abortion Funds and Their Associates

On September 28, 2021, Defendant Mistie Sharp, a Texas resident, intervened in a challenge to S.B. 8 filed in this district "to defend and preserve [her] state-law right to sue abortion funds that pay for post-heartbeat abortions in violation of Senate Bill 8." Mehl Decl. ¶ 11; *id.* Ex. A ¶ 12. In support of her motion to intervene, Ms. Sharp declared under penalty of perjury that she "intend[s] to sue . . . abortion funds who pay for other people's abortions in violation of Senate Bill 8." *Id.*; *id.* Ex. A ¶ 9.

Defendants Sadie Weldon and Ashley Maxwell, who are also Texas residents, commenced legal proceedings against at least two Texas abortion funds and their associates, and publicly threatened all Texas abortion funds and their associates with civil lawsuits, under S.B. 8. *Id.* ¶ 12. In February 2022, they respectively filed in state court verified petitions to take depositions and investigate a lawsuit ("Rule 202 Petitions") against Lilith Fund and North Texas Equal Access Fund ("TEA Fund"). *Id.* ¶ 13. These petitions assert that Defendants' "goal is to . . . ascertain the identity of all individuals and organizations who are subject to liability under [Texas Health & Safety Code] section 171.208." *Id.*; *id.* Ex. B at 3; *id.* Ex. C at 3. On February 14, 2022, Defendants Weldon and Maxwell issued a press release through their attorneys stating that they filed the Rule 202 Petitions "to determine which individuals are subject to civil liability . . . for paying [for]

illegal abortions, which will include employees, volunteers, and donors" of the respondent abortion funds. *Id.* ¶ 14; *id.* Ex. D. On February 21, 2022, Defendants Weldon and Maxwell issued an additional press release through their attorneys stating that the respondent abortion funds "exposed their employees, volunteers, and donors to civil lawsuits." *Id.* ¶ 15; *id.* Ex. E. That same day, in response to a tweet by one of the abortion funds announcing its goal to "raise $20k for Texans who need abortions," Defendants' attorneys tweeted a warning to potential "donors" that they "could get sued under S.B. 8." *Id.*; *id.* Ex. F.

Defendants' credible threats of civil lawsuits under S.B. 8 against Texas abortion funds and their donors, employees, and volunteers have bred uncertainty about whether donors can contribute money to Texas abortion funds without being subject to ruinous civil liability. *See id.* ¶ 16; Sadler Decl. ¶ 10. Consequently, Plaintiffs Mehl and Sadler have ceased donating money to Texas abortion funds until the Court provides clarity on this issue. Mehl Decl. ¶¶ 16–17, 19; Sadler Decl. ¶ 10. The Stigma Relief Fund is thus reasonably concerned that Defendants' threats will chill prospective and existing donors, employees, and volunteers from associating with the fund. Sadler Decl. ¶ 11. The aggressive, public nature of Defendants' statements and actions also threatens to chill other abortion funds and their supporters, making it even harder for Plaintiffs to associate with like-minded people to achieve common goals, including communicating messages of support and affirmation to people seeking abortion care and advocating for safe abortion access for all. *See* Davis Decl. ¶ 12; Mehl Decl. ¶¶ 9, 16–17; Sadler Decl. ¶¶ 6–7, 11.

## ARGUMENT

### I.   Summary Judgment and Declaratory Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a

reasonable [factfinder] could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citations omitted). "The Federal Rules of Civil Procedure give district courts the power to grant summary judgment motions before the parties have completed discovery." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (citing Fed. R. Civ. P. 56(b)); *accord Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) ("Rule 56 does not require that *any* discovery take place before summary judgment can be granted." (citation omitted)).

Rule 56(d) authorizes the court to delay consideration of a motion for summary judgment to allow the nonmoving party "time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). "However, 'non-moving parties requesting Rule 56(d) relief may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *MDK Sociedad*, 25 F.4th  at 366 (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (additional citations omitted)). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id*.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* "[A]llegations that irreparable injury is threatened are not required." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937).

Like all federal actions, an action brought under the Declaratory Judgment Act must satisfy Article III's case or controversy requirement. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). "[W]here threatened action by government is concerned, [Article III does] not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *Id.* at 128–29 (emphasis omitted). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at 129; *accord Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("[A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."). The same is true where "the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a *private party* rather than the government." *MedImmune, Inc.*, 549 U.S. at 130; *see id.* at 137 (holding that a plaintiff was not required to breach a patent license agreement before seeking a declaratory judgment in federal court that the underlying patent was invalid and unenforceable).

## II. Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 3 of S.B. 8.

### A. S.B. 8's Enforcement Scheme Violates Plaintiffs' Right to Procedural Due Process.

#### 1. S.B. 8 's Enforcement Scheme Fails the Balancing Test Prescribed by *Mathews v. Eldridge*.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The Court

traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). At a minimum, procedural due process requires "that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

Courts must evaluate the adequacy of procedural safeguards in a hearing by balancing the interests identified in *Mathews*. *See Walsh v. Hodge*, 975 F.3d 475, 482 (5th Cir. 2020) (citing *Mathews*, 424 U.S. at 335). In particular, "[c]ourts must balance (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *Id.* (quoting *Mathews*, 424 U.S. at 335). "The existence of post-deprivation remedies through further administrative hearings, judicial review, or independent state-law based causes of action are irrelevant to the question of what constitutes adequate hearing procedures, when the deprivation occurs in a non-random, state-authorized hearing convened pursuant to 'established state procedures.'" *Cuellar v. Tex. Emp't Comm'n*, 825 F.2d 930, 936 (5th Cir. 1987) (quoting *Logan*, 455 U.S. at 436).

Here, Plaintiffs have shown that S.B. 8's enforcement scheme lacks adequate procedural safeguards according to the balancing of interests required by *Matthews*. First, defendants in S.B. 8 enforcement proceedings have a substantial, protected property interest in avoiding paying a minimum of $10,000 for each unlawful abortion that they provided, aided, or abetted, in addition

to the plaintiff's litigation costs and attorney's fees. *See* Tex. Health & Safety Code § 171.208(b)(2)-(3); *supra* 4–5; *Walsh*, 975 F.3d at 482. Defendants in S.B. 8 enforcement proceedings also have a substantial, protected liberty interest in avoiding an injunction barring them from "aiding or abetting" abortions deemed to violate S.B. 8. *See* Tex. Health & Safety Code § 171.208(b)(1); *supra* 4; *Walsh*, 975 F.3d at 482. Plaintiffs have demonstrated that such an injunction would prevent them from engaging in activism, such as donating to Texas abortion funds, that they believe to be a moral imperative. *See* Davis Decl. ¶¶ 2, 5, 9–10; Mehl Decl. ¶¶ 17–18; Sadler Decl. ¶¶ 4–7.

Second, the risk of an erroneous deprivation of these property and liberty interests through the procedures required by S.B. 8 is significant, and the probable value of substitute procedural safeguards is high. *See Walsh*, 975 F.3d at 482. For instance, the inability of state court judges to transfer the venue of S.B. 8 cases without the claimant's consent—no matter how much prejudice the defendant faces—*see* Tex. Health & Safety Code § 171.210(b), exposes defendants to suit in distant venues unrelated to the conduct that triggered the claim, and in multiple venues across the state simultaneously, *see supra* 4. Because this makes it difficult and expensive for the defendant to appear, produce witnesses, confront and cross-examine adverse witnesses, and otherwise mount a complete defense, authorizing state court judges to transfer venue for good cause would greatly reduce the risk of an erroneous deprivation. *See Walsh*, 975 F.3d at 485; *Goldberg v. Kelly*, 397 U.S. 254, 267–69 (1970).

Likewise, the risk of an erroneous deprivation of property and liberty interests based on the inability to raise key defenses in an S.B. 8 enforcement proceeding—and thus the value of allowing these defenses—cannot be overstated. *See* Tex. Health & Safety Code § 171.208(e), (f-1); *Walsh*, 975 F.3d at 482. Notably, S.B. 8 defendants may not defend themselves on the ground

that they were acting pursuant to a valid court order. *See* Tex. Health & Safety Code § 171.208(e)(3).

S.B. 8's one-way shifting of attorney's fees from claimants to defendants also heightens the risk of an erroneous deprivation of defendants' property and liberty interests. *See* Tex. Health & Safety Code §§ 171.208(b)(3), 171.208(i); *supra* 5; *Walsh*, 975 F.3d at 482. Because the fee shifting is unlimited by reasonableness or necessity, it pressures S.B. 8 defendants to settle, rather than challenge, unmeritorious claims or S.B. 8 itself and risk incurring the claimant's attorney's fees. *See* Tex. Health & Safety Code §§ 171.208(b)(3), 171.208(i). Accordingly, the invalidation of the one-way fee-shifting scheme would greatly enhance the ability of S.B. 8 defendants to protect their property and liberty interests from erroneous deprivation. *See Walsh*, 975 F.3d at 482.

The third interest set forth in *Matthews* also weighs in favor of the conclusion that S.B. 8's enforcement scheme violates the right to procedural due process. *See id.* (citing *Mathews*, 424 U.S. at 335). Texas lacks a valid interest in rigging S.B. 8 enforcement proceedings against defendants and all but ensuring the erroneous deprivation of their property and liberty interests. *Cf. Nelson v. Colorado*, 137 S. Ct. 1249, 1257 (2017) ("Colorado has no interest in withholding from [defendants] money to which the State currently has zero claim of right."). Moreover, authorizing state court judges to transfer venue in S.B. 8 enforcement proceedings for good cause, permitting S.B. 8 defendants to invoke the defense that they were acting pursuant to a valid court order, and invalidation of S.B. 8's one-way fee-shifting scheme in favor of generally applicable Texas laws governing attorney's fees in state court litigation would impose no fiscal or administrative burdens on the State. *See Walsh*, 975 F.3d at 482; *compare* Tex. Health & Safety Code § 171.210(a)(4) (allowing suit in the claimant's county of residence if "the claimant is a natural person residing in" Texas), *and* Tex. Health & Safety Code § 171.210(b) (providing that an S.B. 8 "action may not be

transferred to a different venue without the written consent of all parties"), *with* Tex. Civ. Prac. & Rem. Code § 15.002(a) (limiting venue to where the events giving rise to the claim occurred or where the defendant resides), *and* Tex. Civ. Prac. & Rem. Code § 15.002(b) (generally allowing Texas state courts to transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice").

### 2. S.B. 8's Enforcement Scheme Threatens to Impose Grossly Excessive Punishments on Plaintiffs.

In addition to failing the balancing test prescribed by *Mathews*, S.B. 8 threatens to violate Plaintiffs' procedural due process rights for a second reason: "The Due Process Clause of the Fourteenth Amendment also prohibits a State from imposing a grossly excessive punishment on a tortfeasor." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (cleaned up). "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *Id.* at 574. This requires, at a minimum, that a damages award be: (1) proportionate to the degree of reprehensibility of a defendant's conduct; (2) proportionate to the actual harm inflicted on the plaintiff; and (3) comparable to remedies awarded in similar cases. *Id.* at 575.

Here, S.B. 8 violates the Constitution's prohibition against grossly excessive punishments by placing no limits on the amount of damages that may be awarded to a claimant, and identifying no criteria for determining damage awards. *See* Tex. Health & Safety Code § 171.208(b); *supra* 4. Simply put, the monetary punishments authorized by S.B. 8 are not proportionate to anything. *See BMW*, 517 U.S. at 574. This is especially true with respect to the "actual harm" to the claimant, as S.B. 8 allows claimants to obtain an award without alleging, much less proving an injury. *Id.* at 580; *see* Tex. Health & Safety Code § 171.208. To illustrate, given that S.B. 8 specifies a minimum

award of $10,000 for each abortion aided or abetted in violation of the statute, Tex. Health & Safety Code § 171.208(b)(2), someone who donates ten dollars to an abortion fund can be held liable for *at least* $10,000 even where the claimant suffered no harm. S.B. 8's penalty scheme is therefore "grossly excessive" and fails to provide notice of the extent of monetary liability that Plaintiffs would face in an S.B. 8 action brought by Defendants. *BMW*, 517 U.S. at 562, 574 (citation omitted).

In conclusion, Plaintiffs are entitled to a declaration that Section 3 of S.B. 8 is unenforceable because it violates the right to procedural due process for two reasons: (1) it fails the balancing test prescribed by *Mathews*; and (2) it threatens to impose grossly excessive punishments on them.

### B.  S.B. 8's Enforcement Scheme Violates Plaintiffs' Rights Under the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Legislative classifications that "impinge on personal rights protected by the Constitution" are subject to strict scrutiny. *See id.* at 440; *accord Butts v. Aultman*, 953 F.3d 353, 358 (5th Cir. 2020) ("Strict scrutiny is required if the legislative classification . . . impinges upon a fundamental right explicitly or implicitly protected by the Constitution.") (citation omitted). Even where a classification does not burden a constitutional right, it must be based on a unique characteristic of the targeted group that is rationally related to the State's legitimate interest in the classification. *See Cleburne*, 473 U.S. at 449–50 ("The question is whether it is rational to treat [people with mental disabilities] differently. It is true that they suffer disability not shared by others; but why

14

this difference warrants a [zoning requirement] that others need not observe is not at all apparent.").

"By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Romer v. Evans*, 517 U.S. 620, 629–30, 633, 635 (1996) (holding that an amendment to the Colorado Constitution prohibiting legislative, executive, or judicial action designed to protect gay and lesbian people from discrimination failed rational basis review, and therefore violated the Equal Protection Clause). A "bare [governmental] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973). In *Cleburne*, for example, the Supreme Court held that the "mere negative attitudes" and "vague, undifferentiated fears" of nearby property owners were inadequate justifications for treating homes for people with mental disabilities differently from all other care and multiple-dwelling facilities. 473 U.S. at 448–49; *see Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("[T]he law cannot, directly or indirectly, give [private biases] effect.")

Section 3 of S.B. 8 violates the Equal Protection Clause because it singles out people who help others access abortion for unfavorable treatment without sufficient justification. Specifically, Section 3 subjects them—and *only* them—to a virtually unprecedented enforcement scheme that bars State officials from enforcing State law, "which has frustrated efforts to obtain preenforcement relief against the statute's enforcement." Defs.' Mot. to Dismiss First Am. Compl. for Lack of Subject Matter Jurisdiction & Lack of Venue (ECF No. 63) at 1; *see supra* 3. The enforcement scheme instead incentivizes private citizens throughout the country to file an unlimited number of burdensome, potentially ruinous civil lawsuits against members of the

targeted class. *See, e.g.*, Tex. Health & Safety Code § 171.208(a),(b)(2) (requiring S.B. 8 defendants to pay at least $10,000 per any abortion deemed to violate S.B. 8 to "[a]ny person" who sues, even if that person has no connection to the abortion and has suffered no harm);[2] *id.* § 171.208(e)(3) (prohibiting S.B. 8 defendants from relying on a court order authorizing their conduct that was in place at the time of the acts underlying the suit, but was later overruled); *id.* § 171.208 (e)(5) (requiring Texas courts to retry cases against S.B. 8 defendants concerning the same abortion so long as a different person brings suit each time); *id.* § 171.210(a)(4), (b) (allowing any claimant residing in Texas to sue in their home county and veto transfer of venue to a more appropriate or convenient forum); *compare id., with* Tex. Civ. Prac. & Rem. Code § 15.002(a) (limiting venue to where the events giving rise to the claim occurred or where the defendant resides), *and* Tex. Civ. Prac. & Rem. Code § 15.002(b) (generally allowing Texas state courts to transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice"); *see also, e.g.*, Tex. Health & Safety Code § 171.208(b)(3), (i) (imposing one-way fee-shifting in favor of S.B. 8 claimants that precludes S.B. 8 defendants from recouping their costs and attorney's fees even if they prevail); *compare id., with* Tex. Civ. Prac. & Rem. Code §§ 10.001–.002 (allowing a prevailing defendant in a frivolous lawsuit, or a lawsuit brought to harass, to recover their costs and attorney's fees). Texas does not impose comparable barriers to vindicating personal rights in federal or state court, or an ongoing threat of boundless civil liability, on anyone but people who facilitate abortion access. This includes people who facilitate access to other conduct that the State deems illegal.

---

[2] Indeed, Texas courts examining statutes that impose statutory damages designed to penalize particular conduct have held that they are actually punitive damages, which cannot be awarded to a private claimant unless the claimant recovers other damages. *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 464–67 (Tex. 2016); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 116–23 (Tex. App. 2015).

Section 3's differential treatment of people who facilitate abortion access impinges on their constitutional rights to procedural due process, *see supra* 10–14, and expressive association, *see infra* 20–21. Accordingly, it is subject to strict scrutiny. *See Cleburne*, 473 U.S. at 440; *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 101 (1972) ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."). In *Mosley*, for instance, the Supreme Court held that a prohibition against picketing "on all but one preferred subject" violated the Equal Protection Clause because it restricted expressive conduct in a manner "far greater than is essential to the furtherance of" Chicago's "substantial governmental interest" in preventing disruption at schools. 408 U.S. at 101–02 (citation omitted). The Court noted that the prohibited picketing was not "clearly more disruptive than the picketing Chicago already permits." *Id.* at 100.

This Court need not decide which level of scrutiny applies here because the classification embodied in Section 3 of S.B. 8 fails even rational basis review. *See Moreno*, 413 U.S. at 534. As with the constitutional amendment struck down in *Romer*, the "absence of precedent for [S.B. 8's enforcement scheme] is itself instructive; discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision." 517 U.S. at 633 (citation omitted). And as with the constitutional amendment struck down in *Romer*, Section 3 of S.B. 8 "withdraws from [the relevant class], but no others, specific legal protection from . . . injuries," including "even . . . the protection of general laws and policies," namely, the ability to obtain relief from S.B. 8 in federal court and meaningfully defend themselves in S.B. 8 enforcement actions. *Id.* at 627, 630; *see supra* 3–5. "Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." *Romer*, 517

17

U.S. at 633. As a result, "[a] law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.*

Section 3 of S.B. 8 fails rational basis review for the additional reason that there can be no legitimate reason for hamstringing the ability of people who facilitate abortion access to vindicate their rights in federal or state court, or subjecting them to an ongoing threat of burdensome litigation and unlimited civil liability. *Cf. id.* at 632 (holding that the constitutional amendment failed rational basis review, and thus violated the Equal Protection Clause, because "its sheer breadth [wa]s so discontinuous with the reasons offered for it that the amendment seem[ed] inexplicable by anything but animus toward the class it affect[ed]"). The only plausible conclusion here is that "the disadvantage imposed [by S.B. 8] is born of animosity," which is a plainly illegitimate governmental interest. *Id.* at 634; *see Zobel v. Williams*, 457 U.S. 55, 61–63 (1982) (holding that State dividend distribution plan failed rational basis review, and therefore violated the Equal Protection Clause, because its only apparent justification was to disfavor new residents as compared to established residents).

In summary, Plaintiffs are entitled to a declaration that Section 3 of S.B. 8 is unenforceable because it violates the Equal Protection Clause by selectively imposing on people who facilitate abortion care: (1) barriers to vindicating personal rights in federal and state court, and (2) a constant threat of burdensome litigation and boundless civil liability, for no plausible reason other than hostility towards the group.

### C.  Section 3 of S.B. 8 Is Overbroad in Violation of the First Amendment.

The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v.*

*U.S. Jaycees*, 468 U.S. 609, 622 (1984). "This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000). Government actions that may infringe on the freedom of expressive association "can take a number of forms." *Roberts*, 468 U.S. at 622. "Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group . . . ." *Id.*

"The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Boy Scouts of Am.*, 530 U.S. at 648. Abortion funds satisfy this criterion. The Stigma Relief Fund, for example, intends to convey a message to its clients that they are not alone and their decision to have an abortion should not be stigmatized. *See* Sadler Decl. ¶ 7. It also intends to convey a message to policymakers and the general public that all people deserve access to safe abortion care regardless of their background or circumstances. *Id.* The individual Plaintiffs share the desire to convey these messages and want to work through the Stigma Relief Fund and other Texas abortion funds to achieve their goals. *Id.*; Davis Decl. ¶ 10; Mehl Decl. ¶ 9.

A law that burdens the right of expressive association may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. *Ams. For Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387–2388 (2021) (holding a California statute unconstitutionally overbroad based on its potential to chill prospective donors from associating with certain organizations). "When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals." *Id.* at 2389. "The risk of a chilling

19

effect on association is enough '[b]ecause First Amendment freedoms need breathing space to survive.'" *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

Consequently, it is well settled that statutes creating civil or administrative liability for unprotected expression must have adequate procedural safeguards to avoid a chilling effect on protected expression. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13–17 (1990) (discussing constitutional safeguards that the Supreme Court has imposed on state defamation laws to minimize the risk of chilling protected speech); *New York Times v. Sullivan*, 376 U.S. 254, 277 (1964) ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel. The fear of damage awards under a rule such as that invoked . . . here may be markedly more inhibiting than the fear of prosecution under a criminal statute." (footnote omitted)); *Freedman v. Maryland*, 380 U.S. 51, 59–60 (1965) (holding that a state statute regulating obscene films failed to provide adequate safeguards against undue inhibition of protected expression).

Here, Plaintiffs' ability to associate with one another, as well as with other like-minded individuals and organizations, for the purpose of providing support and affirmation to abortion patients and advocating for abortion rights is burdened by S.B. 8's creation of broad liability for aiding-and-abetting abortions. *See supra* 4–5, 7. Not only does S.B. 8 fail to provide adequate safeguards for protected forms of expression—like those aimed at helping Texans travel out of state to access abortion care and those aimed at helping Texans obtain abortion care authorized by court order—it actually *incentivizes* lawsuits against people, like Plaintiffs, who engage in protected expression concerning abortion.  It does so by authorizing any person, other than a Texas official, to bring a claim without regard to whether they have suffered an injury, *supra* 3–4; stacking the procedural deck against abortion providers and supporters, *supra* 4–5; providing

successful claimants with a minimum statutory award of $10,000 plus attorney's fees, *supra* 4–5; and insulating unsuccessful claimants from adverse attorney-fee awards, even for frivolous claims, *supra* 5. Under the circumstances, it is highly likely that Plaintiffs and others involved in facilitating lawful abortion care will be sued under S.B. 8. Even if they ultimately prevail, the costs of defending the suit amount to a financial penalty for their expressive activity. Because of this, Plaintiffs Sadler and Mehl have ceased making donations to Texas abortion funds, and other donors and prospective donors will inevitably be chilled from contributing, as well. Mehl Decl. ¶¶ 16–17; Sadler Decl. ¶¶ 10–11.

Accordingly, Plaintiffs are entitled to a declaration that Section 3 of S.B. 8 is unenforceable because it is overbroad in violation of the First Amendment.

### III.     Plaintiffs Are Entitled to Summary Judgment on Their Claims Against Section 4 of S.B. 8.

#### A.  S.B. 8's Fee-Shifting Scheme Violates Plaintiffs' Freedom of Speech.

It is well-settled that public-interest litigation is a form of protected First Amendment activity. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) ("There can be little doubt that the [Legal Services Corporation] Act funds constitutionally protected expression . . . ."); *In re Primus*, 436 U.S. 412, 431 (1978) ("The ACLU engages in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public."); *NAACP v. Button*, 371 U.S. at 429–30 ("In the context of NAACP objectives, litigation is . . . a form of political expression. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances."). Plaintiffs' efforts to challenge the constitutionality of Texas statutes restricting access to abortion in service of their broader political objectives to promote abortion rights and ensure equitable access to abortion care fall squarely within the zone of protection.

21

It is "a core postulate of free speech law" that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019); *accord Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed." (citations omitted)). "A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991). "In the context of financial regulation, . . . the government's ability to impose content-based burdens on speech raises the specter that the government may effectively drive certain ideas or viewpoints from the marketplace." *Id*. at 116 (citing *Leathers v. Medlock*, 499 U.S. 439, 448–49 (1991)). "The First Amendment presumptively places this sort of discrimination beyond the power of the government." *Id*. In determining whether a law that targets certain speakers for financial burdens violates the First Amendment, a court need not consider the motives of lawmakers. *Id*. at 117 (rejecting the argument that "discriminatory financial treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas").

Section 4 of S.B. 8 is presumptively unconstitutional because its one-way fee-shifting scheme singles out for financial liability litigants and attorneys with a particular viewpoint; namely, those who assert in litigation that Texas laws restricting abortion are unconstitutional or otherwise unenforceable. *See* Tex. Civ. Prac. & Rem. Code § 30.022; *supra* 5. The provision cannot satisfy strict scrutiny because it is not narrowly tailored to serve any compelling state

interest. *See In re Primus*, 436 U.S. at 432–33. Indeed, it is analogous to the law struck down in *Velazquez*, which barred attorneys seeking to challenge the validity of welfare laws from participation in a government-funded legal-services program. *Velazquez,* 531 U.S. at 538. There, the Supreme Court explained that "[t]he attempted restriction [was] designed to insulate the Government's interpretation of the Constitution from judicial challenge." *Id*. at 548.  It held that "[t]he Constitution does not permit the Government to confine litigants and their attorneys in this manner." *Id*. So too here.

Consequently, Plaintiffs are entitled to a declaration that Section 4 of S.B. 8 is unenforceable because it violates the First Amendment.

### B.  S.B.8's Fee-Shifting Scheme Violates Plaintiffs' Rights Under the Equal Protection Clause.

Section 4 of S.B. 8 violates the Equal Protection Clause because it singles out people who help others access abortion for unfavorable treatment without sufficient justification. Specifically, it subjects advocates of abortion access, including people who facilitate abortion access, to an unprecedented one-way fee-shifting scheme designed to deter legal challenges to Texas abortion restrictions and penalize those who bring such a challenge. *See* Tex. Civ. Prac. & Rem. Code § 30.022; *supra* 5–6. Unlike other people seeking judicial relief from a putatively unconstitutional or otherwise impermissible law, advocates of abortion access may be liable for their adversaries' attorney's fees years after the resolution of their case, and at the direction of a judge who did not Presides over the case, unless they prevail on all their claims. *See* Tex. Civ. Prac. & Rem. Code § 30.022.

Section 4's differential treatment of people who facilitate abortion access is subject to strict scrutiny because it plainly burdens protected expression contrary to the First Amendment. *See id.*; *Mosley*, 408 U.S. at 101. And it necessarily fails strict scrutiny because it is not narrowly tailored

to serve any compelling State interests. *See supra* 22–23; *In re Primus*, 436 U.S. at 432–33; *Velazquez,* 531 U.S. at 538. Section 4 cannot withstand judicial review even if this Court were to apply rational basis review. *See Cleburne*, 473 U.S. at 449–50. Like Section 3's enforcement scheme, Section 4's fee-shifting scheme requires "careful consideration" because it is a "discrimination[] of an unusual character." *Romer*, 517 U.S. at 633. And like Section 3's enforcement scheme, Section 4's fee-shifting scheme withdraws from advocates of abortion access, but no other class of people, "specific legal protection from . . . injuries," including "even . . . the protection of general laws and policies," namely, the ability to obtain judicial relief from impermissible, harmful abortion restrictions. *Id.* at 627, 630; *see supra* 5–6. "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Romer*, 517 U.S. at 633. Section 4 of S.B. 8 fails rational basis review for the additional reason that there can be no legitimate reason for constraining the ability of people who facilitate abortion access to vindicate their rights in federal or state court, or for subjecting them to an ongoing threat of attorney's fees. *See Moreno*, 413 U.S. at 534 (A "bare [governmental] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.").

In conclusion, Plaintiffs are entitled to a declaration that Section 4 of S.B. 8 is unenforceable because it violates the Equal Protection Clause by selectively imposing on people who facilitate abortion care: (1) a barrier to vindicating their personal rights in federal or state court, and (2) a constant threat of attorneys fees, for no plausible reason other than antagonism towards the group.

### C.  S.B. 8's Fee-Shifting Scheme is Preempted by Section 1988.

Under the Supremacy Clause, when "state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (cleaned up). Such conflict occurs

"when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *United States v. Locke*, 529 U.S. 89, 109 (2000) (cleaned up); *see United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

In 42 U.S.C. § 1988, Congress carefully determined how attorney's fees are to be allocated in federal civil-rights actions, regardless of whether the actions occur in state or federal court. Section 1988 provides that, in "any action" to enforce Section 1983 and other covered civil rights statutes, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988 grants a right to a prevailing plaintiff to "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (per curiam); *accord Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016). But a prevailing defendant in a Section 1983 case may recover attorney's fees from the plaintiff "only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). In all other circumstances, a non-prevailing plaintiff has a right to bring their civil rights claims without risk of incurring the other side's attorney's fees.

Section 4 of S.B. 8 directly conflicts with, and must give way to, Section 1988 because it allows a defendant who loses a Section 1983 case concerning abortion to recover fees from the plaintiff. *See* Tex. Civ. Prac. & Rem. Code § 30.022(b); *supra* 5; *Fox v. Vice*, 563 U.S. 826, 836 (2011). Section 4's definition of "prevailing party," Tex. Civ. Prac. & Rem. Code § 30.022(b)(1)-(2), also directly conflicts with federal law, *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001) (holding that "prevailing party" is a "term

of art" that requires some "alteration in the legal relationship of the parties"). Moreover, whereas Section 4 authorizes defendants to seek fees and costs in an entirely new proceeding before a different judge within three years of the resolution of plaintiffs' claims, *see* Tex. Civ. Prac. & Rem. Code § 30.022(c)-(d), Section 1988 requires that a request for attorney's fees be made in the "action or proceeding to enforce" a federal civil rights statute, including Section 1983, 42 U.S.C. § 1988(b), and within 14 days of the judgment, or it is waived. *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998), *decision clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999); *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996).

Section 4 of S.B. 8 also obstructs the accomplishment and execution of Congress's objectives. *See United States v. Locke*, 529 U.S. 89, 109 (2000) (cleaned up). Specifically, Section 4 disincentivizes the vindication of constitutional rights, and allows defendants found to have violated federal law to recover fees. *See supra* 5–6; *contra Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978). Likewise Section 4 greatly expands the circumstances in which defendants in civil rights cases may recover fees and costs "for a reason manifestly inconsistent with the purposes" of Section 1988. *See Felder v. Casey*, 487 U.S. 131, 141–42 (1988) (holding that a state notice-of-claim requirement was preempted as applied to Section 1983 claims because it aimed "to minimize governmental liability," thus undermining Section 1983's "uniquely federal remedy"); *see also Haywood v. Drown*, 556 U.S. 729, 733–34 (2009) (holding that a state correctional law was preempted where the state "strip[ped] its courts of jurisdiction" over Section 1983 damages claims and instead forced plaintiffs to sue the state in a court of claims without access to "the same relief, or the same procedural protections," as would otherwise apply in a Section 1983 case).

26

Courts considering other state laws that govern the award of attorney's fees and costs to prevailing defendants have held that those laws are preempted by Section 1988 or analogous federal fee-shifting provisions. *See, e.g.*, *State v. Golden's Concrete Co.*, 962 P.2d 919, 926 (Colo. 1998) (en banc) (concerning the interplay between a Section 1983 claim and a state rule that permitted a prevailing defendant to recoup fees in circumstances other than where the plaintiff's action was "frivolous, unreasonable or without foundation" (citation omitted)); *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 746–47 (9th Cir. 2009) (holding that a mandatory fee award to prevailing defendants under the California Disabled Persons Act conflicted with, and was therefore preempted by, the fee-shifting standard applicable to the Americans with Disabilities Act).

Because Section 4 of S.B. 8 directly conflicts with Section 1988 in numerous ways, Plaintiffs are entitled to a declaration that Section 4 is unenforceable because it is preempted by Section 1988 with respect to Section 1983 claims.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion for summary judgment in its entirety.

Dated:  November 15, 2022

Respectfully submitted,

*/s/ Rupali Sharma*

Rupali Sharma*
Maine Bar No. 006192
LAWYERING PROJECT
113 Bonnybriar Road
South Portland, ME 04106
Phone: (908) 930-6645
Fax: (646) 480-8622
rsharma@lawyeringproject.org

Stephanie Toti
New York Bar No. 4270807
Juanluis Rodriguez*
New York Bar No. 5543194
Melissa C. Shube
New York Bar No. 5443270
LAWYERING PROJECT
41 Schermerhorn Street, No. 1056
Brooklyn, NY 11201
Phone: (646) 490-1083
Fax: (646) 480-8622
prodriguez@lawyeringproject.org
stoti@lawyeringproject.org
mshube@lawyeringproject.org

Tanya Pellegrini*
LAWYERING PROJECT
California Bar No. 285186
584 Castro Street, No. 2062
San Francisco, CA 94114
Phone: (646) 480-8973
Fax: (646) 480-8622
tpellegrini@lawyeringproject.org

*Admitted pro hac vice*

Dorian Vandenberg-Rodes
Texas Bar No. 24088573
SHELLIST LAZARZ SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, TX 77046
Phone: (713) 621-2277
Fax: (713) 621-0993
drodes@eeoc.net

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 15, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Rupali Sharma*
Rupali Sharma